## 48020. CULLERS v. HOME CREDIT COMPANY.

EBERHARDT, Presiding Judge. Appellant brings this appeal from the denial of his motion to set aside a default judgment entered in a suit on a contract made pursuant to the Industrial Loan Act (Ga. L. 1955, p. 431, as amended; Code Ann. § 25-301 et seq.). *Held:*

1. The original grounds of the motion to set aside, and enumeration of error 1, present the question of whether a lender may sell to the borrower any type of credit life insurance other than declining term. We dealt with this in *Mason v. Service Loan &c. Co.,* 128 Ga. App. 828 (3) (198 SE2d 391), holding that either type of credit life insurance in connection with industrial loans is lawful, which we here follow. See Comptroller-General's Industrial Loan Regulations, § 120-1-11-.02(2) (a, b).

2. The amendment to the motion to set aside, and enumeration of error 2, complain that appellee violated Ga. L. 1955, pp. 431, 444 (Code Ann. § 25-319) by failing to disclose on the loan statement or on the loan contract that appellant was receiving level term, as opposed to decreasing term, credit life insurance. The statute in question provides that "At the time the loan is made, each licensee hereunder shall deliver to the borrower . . . a copy of the loan contract or a written itemized statement in the English language showing in clear terms . . . the amount of each class of insurance carried and the premiums paid thereon . . ." The Statement of Loan provides, in part: "The Amount Financed will be disbursed to or for Borrower as follows: Credit Life Insurance

Premium —— $24; Credit Accident and Health Ins. Premium —— $36; Personal Property Insurance Premium —— $24; Auto Physical Damage Insurance Premium etc. —— $-0-."

Elsewhere in the contract appears "Amount of Life Insurance —— $600 . . . . Accident and Health Insurance Monthly Benefit —— $25 . . . Insurance —— The purchase of Credit Life or Credit Accident and Health Insurance *is not required by Lender in order to obtain a loan. Borrower, however, having first examined the cost of such insurance, as indicated opposite, does hereby voluntarily elect to purchase the following coverages:* [√] Credit Life Insurance [√] Credit Accident and Health Insurance [dated and signed by borrower]"

Credit life insurance, being a form of life insurance, is a part of that "class" of insurance as defined in Code Ann. § 56-305, whether it be level or reducing term.

3. "Credit Level Term Life Insurance or group credit level term life insurance may be written as security on *all* loans made under the provisions of the Industrial Loan Act. Insurance coverage shall not exceed the face amount of the contract." Comptroller-General's Industrial Loan Regulations, § 120-1-11-.02 (a). (Emphasis supplied.)

"Credit reducing term life insurance or group credit reducing term life insurance may be written on all loans made under the provisions of the Act. Insurance coverage shall not exceed the face amount of the contract." Comptroller-General's Industrial Loan Regulations, § 120-1-11-.02 (b).

There is no provision, either in the statute (Code Ann. §§ 25-315 and 56-3306) or in the Commissioner's Regulations requiring that the borrower be given the option as to which type of credit life insurance is to be written. It is required that the statement of the transaction show the amount of the insurance and the premium to be paid therefor. That was done. The insurance policy or certificate must be delivered within 30 days after acceptance of the application and risk. The application must indicate the effective date. Code Ann. § 56-3306.

There is, of course, as between level term and declining or reducing term insurance, some difference in the premium to be paid and in the benefit which may result to the borrower. If it is desirable that the borrower be afforded the option as to which of these he will buy, it is a matter that is within the power delegated by the General Assembly to the commissioner (see Code Ann. § 25-315)

and provision for the option should be made in his regulations,[1] — not by the court. It is a legislative function which either the General Assembly or the commissioner may perform, but we have no legislative power.

Since the commissioner has already provided that level term credit life insurance may be written as security for *all* loans made under the Act, which he was authorized to do under Code Ann. § 25-315, and the licensees of this state have acted under the regulation when writing level term insurance, the courts should not void the loans simply because, in our view, the regulations should go further and provide for the giving of an option to the borrower as to whether he will buy level or reducing term insurance.

There can be no fair way of effecting such a requirement except by the adoption of a rule or regulation in accordance with the provisions of the Administrative Procedure Act of 1964, §§ 3 and 4 (Code Ann. §§ 3A-103, 3A-104), which declares our public policy as requiring the giving of advance notice to all who may be interested and the holding of a public hearing before promulgating the rule or regulation, and, of course, it is to be given prospective effect from the effective date.[2] Code Ann. § 3A-106.

We are required to take judicial notice of any rule or regulation which the commissioner has adopted in conformity with the Administrative Procedure Act. Code Ann. § 3A-108. Consequently, at this time we must judicially know that it is

---

[1]On November 1, 1973 the commissioner promulgated additional regulations and amendments to regulations affecting the making of industrial loans, effective January 1, 1974. Included in these is regulation No. 120-1-14-.15 which provides, inter alia, "If the creditor requires credit life insurance, the creditor shall give the debtor written notice of the debtor's right to choose either level term life insurance or reducing term life insurance coverage. The creditor may for reasonable cause before credit is extended decline the insurance provided by the debtor."

[2]The right of the lender to sell level term or declining term credit life insurance is confirmed by the additional regulations and amendments issued November 1, 1973, effective January 1, 1974, and provision is made for giving the borrower the election as to which he will buy.

provided under the commissioner's regulations, § 120-1-11-.02 (a) that the lender may write level term credit life insurance as security for *all* loans made under the Industrial Loan Act, or he may, if he so chooses, write reducing term credit life insurance on them, and that since, at the time this loan was made, nothing in either the Industrial Loan Act or in the commissioner's regulations required that an option be afforded to the borrower as to which he would buy, it was not a violation of the law for the lender to write or sell only one of these types of insurance. If it is not required by law, or by regulation having the effect of law, we can not say that it must be included in the statement of the transaction required to be delivered to the borrower under Code Ann. § 25-319.

We agree that "the law on this question is not simply what the judges of this court think the law *should be* but what the General Assembly has said it is." *Horton v. Brown,* 117 Ga. App. 47, 49 (159 SE2d 489). It is to be found in the Industrial Loan Act, and in the commissioner's regulations, issued pursuant to the authorization therein found, and our judgment is rested upon them.

4. The disclosure here fully complies with the requirements of the Truth in Lending Act, 15 USC § 1505 (5), providing that where imposed directly or indirectly by the creditor as an incident to the extension of credit, the "premium or other charge for guarantee or insurance protecting the creditor against the obligor's default or other credit loss" is a part of the finance charge to be disclosed. However, by the terms of 15 USC § 1605 (b) the premium is not a part of the finance charge (1) if the coverage is not a factor in the extension of the credit, or (2) if the person to whom credit is to be extended gives specific written indication of his desire to obtain the insurance after written disclosure to him of the amount of the premium. The record shows this was done.

We can find nothing in either the statutes or the regulations requiring a disclosure or statement as to whether the insurance written is level term or declining term, but such a disclosure, either on an application or on the loan contract itself, if made, would appear to be a proper one.

The statement of the loan, appearing on the face of the contract, is sufficient to meet the requirements of the statutes and of the regulations, as they stood when this loan was made and as they now stand.

The holding in *Patman v. General Finance Corp.*, 128 Ga. App. 836 (198 SE2d 371) was based upon the failure of the statement of the transaction or the loan contract to show the *amount* of credit life insurance to be obtained on the life of the borrower. Any indication that a failure further to show whether the insurance was to be level term or declining term might have voided the obligation was obiter dicta. Under Code Ann. §§ 25-319, 25-9903 the obligation was already voided by the lender's failure to meet the statutory requirement of showing the *amount* of the insurance, and it was unnecessary to deal with anything else. It is to be noted that on the statement of the transaction in that case there were places to be checked for indicating whether the insurance would be level or declining term, and neither was checked. In *Mason v. Service Loan &c. Co.*, 128 Ga. App. 828, supra, it appears that the statement of the transaction "revealed a premium charge for a 'level term' credit life insurance policy rather than for a 'declining term' policy," and we pointed out that "the borrower elected to take the level term." The offering of the election to the borrower was neither required nor prohibited by the law or by regulations, in those cases or here, though it will be required beginning January 1, 1974 under Regulation 120-1-14-.15.

5. This is a proceeding to set aside a default judgment, brought under § 60 (d) (Code Ann. § 81A-160 (d)) of the Civil Practice Act which requires that the motion "must be predicated upon some nonamendable defect which does appear upon the face of the record or pleadings" upon which the judgment was rendered, and that "it is not sufficient that the complaint or other pleading fails to state a claim upon which relief can be granted, but the pleadings must affirmatively show that no claim in fact existed." Appellant has wholly failed to meet these requirements. The pleadings upon which this judgment was rendered do not show that no claim in fact existed.

*Judgment affirmed. Bell, C. J., Quillian and Clark, JJ., concur. Evans, J., concurs specially. Hall, P. J., Pannell, Deen and Stolz, JJ., dissent.*

ARGUED APRIL 9, 1973 — DECIDED NOVEMBER 28, 1973 — REHEARING DENIED DECEMBER 18, 1973 —

*Richard D. Ellenberg,* for appellant.
*B. J. Roberts,* for appellee.

*Barry Phillips, Richard R. Cheatham,* amicus curiae.

Evans, Judge, concurring specially. The posture of this case, as it reaches the writer, is that it has been considered by the other eight members of this court, resulting in four votes for the original opinion and four votes contra. It, therefore, falls my lot to cast the deciding vote.

Cullers borrowed a sum of money from Home Credit Company, under the Georgia Industrial Loan Act (Ga. L. 1955, p. 431; Code Ann. Ch. 25-3), which is also referred to as the "Small Loan Act." The principal question at issue here is as to whether the lender furnished the borrower with a proper and adequate description of the insurance which the borrower was required to purchase at the time the loan was made.

Code Ann. § 25-315 (c) authorizes the lender to accept as security "reasonable insurance on the life, health and/or against accident of the principal party" and also authorizes the commissioner to promulgate rules to effectuate the provisions of the Act.

Code Ann. § 25-319 directs the lender to deliver to the borrower a copy of the *loan contract,* and then, instead of also directing that *a copy of the insurance policy* be furnished the borrower, the language used in this statute merely requires that the lender deliver to the borrower a description of "the amount of each class of insurance carried and the premiums paid thereon . . ."

The record in this case shows that the lender furnished to the borrower a description which included the following: The class of insurance, to wit, "Credit Life Insurance" and "Credit Accident and Health Insurance." The amount of life insurance carried —— $600; Monthly benefits from accident and health insurance —— $25; Premiums paid on Credit Life Insurance —— $24; Premiums paid on Credit Accident and Health Insurance —— $36; Premiums paid on personal property insurance —— $24.

The above information complies with the meager requirements of Code Ann. § 25-319 as to a description of the insurance carried and the premiums paid thereon.

It would have been much better from the borrower's standpoint if the law had required that borrower be furnished with a *copy of each and every insurance policy* that he was required to purchase at the time of making the loan. But the General Assembly, in its wisdom, did not see fit to include such requirement, but in the most general and vague terms simply required the furnishing of "the amount of each class of insurance carried and the premiums paid thereon." The requirement of the rule issued by the

commissioner, as authorized by Code Ann. § 25-315 (c), is not much more comprehensive or extensive than are the requirements of the statute (Code Ann. § 25-319). Rule 120-1-11-.01 (General Regulations) requires that the lender furnish to the borrower, at the time of the loan the following: A policy application, certificate or written statement of insurance; a written statement as to the amount of insurance; a written statement as to the term of coverage; the amount of premiums; and a description of the coverage. The written statement of insurance is shown as Exhibit A (Record 4, 5); the amount of insurance is shown as $600; the term of coverage is shown as from July 14, 1969, to July 14, 1971; the insurance premiums are shown to be itemized, $24, $36, and $24; and the coverage is for life insurance and accident and health insurance.

The commissioner also promulgated Rule 120-1-11-.02, which describes "level term life insurance," and "reducing term life insurance" — but there is no rule requiring the lender to sell, nor requiring the borrower to purchase, such insurance. It is, therefore, immaterial that neither of such insurance types is referred to in the written statement furnished by the lender to the borrower.

Thus, it is shown that lender complied with the statute and with the rules promulgated by the commissioner as to furnishing borrower with the required description of the insurance borrower was purchasing.

Some of my associates have suggested that before this court can now hold the description in the case sub judice to be sufficient, it is necessary that we review and overrule our earlier case of *Patman v. General Finance Corp.,* 128 Ga. App. 836 (198 SE2d 371), in which case it was held that the borrower was not sufficiently advised as to the *class* of insurance he was required to purchase, or the *amount* thereof.

The result reached in the *Patman* case was correct, because, without question, the borrower was not informed as to the *amount* of insurance, whereas in the present case the borrower was informed that the amount of insurance was $600.

But the *Patman* case is incorrect in stating that the class or kind of insurance was not sufficiently *described* to the borrower. A careful study of the *Patman* case shows that the borrower was given the original or a copy of a written form showing, as to the class of insurance he was purchasing, the words "level and decreasing term insurance." Neither "level" nor "decreasing" was stricken or marked out. Thus the borrower was advised that he was

purchasing both *level term insurance* and *decreasing term insurance.* Nothing prevented his purchase of both types of insurance.

Because the *result* in the *Patman* case is correct, in that the *amount* of insurance was not made known to the borrower, it may be that the statement as to *insufficient description of the class or kind of insurance,* though incorrect, may be treated as surplusage. Or, it may be that the case should be overruled for the sole purpose of eliminating that part of said opinion which holds that the *class of insurance* was not properly described, leaving the result as it is, because in fact the *amount* of insurance was not there made known to the borrower.

Therefore, while expressing my displeasure with the terms of the statute, and the rules promulgated by the commissioner, and emphasizing my feeling that said statute or said rules, or both, should require the lender to furnish the borrower with *a copy of the insurance policy,* I feel that here there has been a compliance with the loose, general, and vague language in Code Ann. § 25-319 as to the required description of the insurance furnished to the borrower at time the loan was made, and with the rules promulgated by the commissioner.

I vote to affirm the judgment of the lower court.

PANNELL, Judge, dissenting. I agree with the ruling of the majority in Division 3 of the opinion holding that the Industrial Loan Act does not require a lender to give the borrower *an option* as to whether he will purchase "level term" or "decreasing term" life insurance. But this is a question very different from that decided in Division 2 of the opinion, to the effect that the lender does not have to state on the loan papers whether the life insurance is "level term" or "decreasing term." I must dissent from the ruling of the majority in Division 2 of the opinion because it is in direct conflict with the holding in Division 2 of the opinion of this court in the case of *Patman v. General Finance Corp.,* 128 Ga. App. 836 (198 SE2d 371); and I must also dissent from Division 4 of the opinion which attempts to merge the very different subject matters of Divisions 2 and 3 into one single issue. The attempt to distinguish this case and to hold the clear distinct ruling in Division 2 of the opinion in the *Patman* case is based solely on the failure of the contract to show the *amount* of credit life insurance and as not ruling that the obligation was voided because of the failure to show whether it was level or declining term insurance, and that if such ruling was made it was obiter dictum

is clearly not supported either by the law or by the opinion sought to be so modified. By the majority ruling, the statement in the *Patman* case "further, nowhere in the contract is the amount of insurance shown" is taken to be the entire ruling of the court. If there is any portion of this decision that is obiter dictum it is the ruling quoted above.

"A ruling is not dictum merely because the disposition of the case is or might have been made on some other ground. 'Where a case presents two or more points, any one of which is sufficient to determine the ultimate issue, but the court actually decides all such points, the case is an authoritative precedent as to every point decided, and none of such points can be regarded as having merely the status of a dictum.' 21 CJS 315, Courts, § 190 (b); *Dooly v. Gates,* 194 Ga. 787, 793 (22 SE2d 730); *Rivers v. Brown,* 200 Ga. 49, 52 (36 SE2d 429)." *Vann v. American Credit Co.,* 115 Ga. App. 559, 561 (155 SE2d 459). "A dictum is an opinion expressed by a court, but which, not being necessarily involved in the case, lacks the force of an adjudication; an opinion expressed by a judge on a point not necessarily arising in the case; a statement or holding in an opinion not responsive to any issue and not necessary to the decision of the case; . . . The term 'dictum' is generally used as an abbreviation of 'obiter dictum' which means a remark or opinion uttered by the way." 21 CJS 309, 311, § 190.

The *Patman* case is the only case deciding the point at issue and disposed of in Division 2 of the majority opinion contrary to the holding in the *Patman* case. I must, therefore, unless the *Patman* case is overruled, most respectfully dissent from the ruling of the majority in Divisions 2 and 4 of the opinion, and the judgment of affirmance.

I am authorized to state that Judge Deen concurs in this dissent.

STOLZ, Judge, dissenting. 1. I dissent from Division 1 of the majority opinion for the reasons expressed in the dissent in *Mason v. Service Loan &c. Co.,* 128 Ga. App. 828 (3) (198 SE2d 391), cert. applied for.

2. I dissent from Division 2 of the majority opinion and concur with the dissent written by Judge Pannell as to Division 2.

3. I further dissent from Division 2 and also Division 3 of the majority opinion. The disclosure statement contained in the "Statement of Loan" recited in the majority opinion is insufficient as a matter of law.

While I did not share the view expressed in Division 3 of *Mason v. Service Loan &c. Co.,* supra, I recognize that it is at present the

prevailing view of this court. Thus, conceding that Code Ann. § 25-315 (c) (Ga. L. 1955, pp. 431, 440; 1964, pp. 288, 291) authorizes the Insurance Commissioner of Georgia (Comptroller General) to allow lenders to require either level term credit life insurance or reducing term credit life insurance as security for the loan and, further conceding that the Insurance Commissioner of Georgia has issued valid rules and regulations to that effect, the "Statement of Loan" in this case is insufficient.

The loan in question was made pursuant to the Georgia Industrial Loan Act, Code Ann. Ch. 25-3 (Ga. L. 1955, p. 431). The Statement of Loan shows on its face that the interest and other charges were in excess of the normal commercial rate. Indeed, the interest charges would be usurious but for the Georgia Industrial Loan Act. The General Assembly, in permitting licensees to operate within the Act, imposed a duty on the licensees to deal openly and fairly with borrowers. The language of Code Ann. § 25-319 (Ga. L. 1955, pp. 431, 444) is susceptible of no other conclusion.

Obviously, the purpose of the statute is to give the borrower complete information concerning the obligation about to be incurred so that the borrower can better protect himself.

In *Patman v. General Finance Corp.,* 128 Ga. App. 836 (198 SE2d 371) this court, as noted in Judge Pannell's dissent, in a unanimous decision, declared void a loan contract which failed to disclose on its face *the amount of insurance* or *the type of credit life insurance* (level or reducing term) purchased by the borrower, holding that such a contract was, "on its face, in violation of § 25-319, it is therefore void under Code Ann. § 25-9903." A motion for rehearing was not filed, certiorari could not be applied for and this case constitutes a binding and controlling precedent.

The Insurance Commissioner of Georgia is authorized to determine and promulgate the rates and maximum premiums permissible to be charged for life, health and/or accident insurance required as security for a loan and to make regulations incident thereto to effectuate the same. Code Ann. § 25-315 (c) (Ga. L. 1955, pp. 431, 440; 1964, pp. 288, 291). Pursuant to this statutory direction the commissioner issued regulations authorizing both the level term credit life insurance, and reducing term credit life insurance. The premiums authorized to be charged for the former was set at 2% per annum of the full amount of the loan, for the latter, 1% per annum of the full amount of the loan. See Rules and Regulations of the State of Georgia, Rules of Comptroller General, Insurance Department, Sec. 120-1-11-02 (1) (a) and (b).

In authorizing either level term or reducing term credit life insurance to be required for the security of the lender, it must be concluded that the commissioner intended that borrowers be advised that *both* types of credit life insurance were available and the cost of each. Code Ann. § 25-319 requires that the borrower receive "a written itemized statement in the English language showing . . . the amount of each class of insurance carried and the premiums paid thereon . . ." The primary purpose of the disclosure statute (Code Ann. § 25-319) is to afford protection for the borrower and the rules, guides and directives established by the Industrial Loan Act and implemented by the Insurance Commissioner (Comptroller General) are expressions of public policy. It would be meaningless for the commissioner to authorize the sale of both level term and declining term credit life insurance without, at the same time, providing that the borrower be advised in writing that both types of credit life insurance are available and the cost of each.[1]

This view is in harmony with the majority opinion in *Mason v. Service Loan &c. Co.,* 128 Ga. App. 828, supra, where it is stated "It must not be overlooked, either, that under the commissioner's interpretation of the statute and his regulations issued in conformity therewith, *the borrower must ask for insurance coverage in writing, and he has the option as to whether he will obtain level term or declining term."* (Emphasis supplied.) It is also in harmony with the spirit of the dissent in *Mason* that "[t]he purpose of the acts is to afford the borrower the greatest practicable measure of protection, and since the acts are remedial in their nature they are to be given a liberal construction in order to effectuate the legislative purpose."

The only way to hold with the majority opinion is to overrule *Patman* and the above language in *Mason.* If we do this, we can then be looked upon as the "grand protectors" of the "money-

---

[1] On June 15, 1972, the insurance commissioner issued an order reducing the premiums allowed to be charged for both types of credit life insurance. The order stated in part: "I hereby find that an imminent peril to the public welfare exists in that borrowers in this State purchasing credit life insurance are continually assessed premiums which are unreasonable in relation to the coverage provided and that remedial measures are needed immediately to reduce premiums being charged for credit life insurance."

lenders and the pawnbrokers" — those who make money out of the misery of the poor. It should be remembered that the Industrial Loan Act was drafted by an investigating committee constituted as the result of suggestions "that a 'loan shark' racket exists in certain sections of this State and that legislation may be necessary to cure such evil if it in fact exists." Ga. L. 1953, Nov. Sess., p. 467. Presumably it did exist because the Industrial Loan Act followed in 1955. If "loan sharking" was an evil, we must presume that the legislature sought to restrict rather than protect those engaged in that practice.

The simple answer to this case is to follow the plain words of the statute itself. Code Ann. § 25-319 requires the contract to show "the amount and *class* of insurance carried and the premiums paid thereon . . ." What is meant by "class"? Surely it does not mean whether it is credit life, liability, fire or theft. Even the poor and ignorant borrower would know it did not have reference to liability, fire, theft, etc. It had reference to the class of credit life insurance — "level or declining term" — as provided for in the regulations of the commissioner which are quoted on p. 442 of the majority opinion. Where the commissioner authorizes *two different classes* of credit life insurance, how in the name of common sense can it be said that these are not classes of credit life insurance? The majority opinion quotes Code Ann. § 56-305 which says "For the purposes of this Chapter," the words "Credit Life Insurance" is a class of Insurance. In *Mason* (p. 830) this court quoted that same chapter to say that the limitations on Credit Life Insurance "are not applicable 'to insurance regulated under the Georgia Industrial Loan Act as to loans made under that Act' . . . Code Ann. § 56-3304 (3)." The majority opinion is inconsistent and uses a type of double standard in interpreting the Act in favor of the "money-lenders" and against the general public.

The majority opinion says that the borrower has *no* option as to whether he can purchase level or declining term credit life insurance. However, in *Mason,* this court said the borrower *"has the option* as to whether he will obtain level term or declining term." (Emphasis supplied.) The inconsistency is obvious and makes the court appear to be talking out of both sides of its mouth. The majority opinion attempts to rationalize this inconsistency by saying that, while it might be desirable for the borrower to have this option (*Mason* says he has it), nevertheless this is a matter for the commissioner. It attempts to make the commissioner the villian here and *this is wrong.* He has provided two different

classes of credit life insurance and the legislature has said that the contract must show the class.

In the understatement of the year, the majority opinion says, "There is, of course, as between level term and declining or reducing term insurance, some difference in the premium to be paid and in the benefit which may result to the borrower." *The difference is — it is twice as much.* To put it another way, that is certainly "some difference."

This court should be realistic and follow the true intent of the General Assembly. It should be remembered that "the law on this question is not simply what the judges of this court think the law *should be* but what the General Assembly has said it is." *Horton v. Brown,* 117 Ga. App. 47, 49 (159 SE2d 489).

I am authorized to state that Presiding Judge Hall and Judge Deen concur in this dissent.