A89A1284. COMMUNITY BANKERS ASSOCIATION OF
GEORGIA, INC. v. FIRST NATIONAL BANK OF COMMERCE
et al.
(388 SE2d 387)

DEEN, Presiding Judge.

The Community Bankers Association of Georgia, Inc. (association), a trade organization composed of 291 state and national banks in Georgia, appeals the trial court's affirmance of a ruling of the State Commissioner of the Department of Banking & Finance. The commissioner's ruling approves the applications of Bank Corporation of Georgia to purchase one branch bank now belonging to Fulton Federal Savings & Loan Association and three branch banks now owned by Georgia Federal Bank, and permits each branch to be purchased by a subsidiary of Bank Corporation and operated as a subsidiary of Bank Corporation in the four counties where they are located.

Appellant association contends that the Georgia banking laws do not permit purchase and operation by a bank holding company of a single *branch bank* of another banking company, but that the purchaser must purchase the entire banking operations of the seller banking company. The association's avowed concern is the buyer's unauthorized branching into counties where formerly it had no operations, in violation generally of OCGA § 7-1-601, which restricts establishment of "branch banks" in particular counties to certain very limited circumstances, including "merger or other consolidation pursuant to the provisions of [OCGA § 7-1-606 (e)]." OCGA § 7-1-601 (c) (1)

(as amended).

The ultimate question, therefore, is the meaning of the language at § 7-1-606 (e), as amended, impliedly permitting the commissioner's approval of a bank holding company's "acquir[ing] control of a *bank*," by which the holding company "may, with the approval of the commissioner, either at the time such control is obtained or at any time thereafter, merge or consolidate such *bank* with another of such bank holding company's banking subsidiaries or have another of such bank holding company's banking subsidiaries acquire all or substantially all of the assets of such *bank* and consequently *operate as a branch* of such other banking subsidiary. . . ." (Emphasis supplied.)

The association argues that the last sentence of § 7-1-600 (1): " '*Bank*' *shall include* 'bank office,' 'bank facility,' 'parent bank,' and '*branch bank,' unless the context indicates that it does not*" (emphasis supplied) means, by the word "includes," that a "bank" consists of any or all of its facilities. That is, the association contends this definitional phrase using the words " 'Bank' shall include . . . 'branch bank' " controls the question whether a purchaser, given approval to buy a "bank," may simply buy a "branch bank" of another banking operation and operate that branch as its own subsidiary. *Held*:

1. The Georgia Department of Banking & Finance contends that this appeal should be dismissed because it should properly have been brought under the discretionary procedure set forth in OCGA § 5-6-35, rather than as a direct appeal under OCGA § 5-6-34.

OCGA § 7-1-90 provides for judicial review of agency decisions not subject to the Georgia Administrative Procedure Act and for appeals from such review. Subsection (b) provides, in pertinent part: "Appeals from all final orders and judgments entered by the superior court under this Code section may be taken to the Court of Appeals or the Supreme Court in the same manner as in other cases."

Appellant contends that judicial review of the decision of the Department of Banking & Finance must be brought as a "special statutory proceeding," as provided in OCGA § 7-1-90 (a). It further contends that, had the legislature intended that appeals from "all final . . . judgments entered by the superior court under" § 7-1-90 be discretionary appeals rather than appeals as of right, as provided in OCGA § 5-6-35, subsection (a) would have so specified; i.e., that it would read, "Appeals . . . under this section may be reviewed under the discretionary appeal procedure provided by OCGA § 5-6-35."[1] The motion to dismiss is denied.

---

[1] Arguably, this case might have been reviewed under the Georgia Administrative Procedure Act, OCGA Title 50, Chapter 13. In language similar to that found in OCGA § 7-1-90 (b), supra, OCGA § 50-13-20 provides for "review of any final judgment of the superior court . . . by the Court of Appeals or the Supreme Court, as provided by law."

2. The trial court was not persuaded by the association's focus on the term " 'Bank' *shall include* . . . 'branch bank,' " and neither are we. The word "includes" is susceptible of meaning, *inter alia,* either "encompasses" or "is equivalent to," and the parties are in fierce contention over this issue. The ambiguity in this language, and the uncertainty and confusion that it has arguably engendered in the instant case, does not necessarily imply a corresponding confusion in the relevant law.

Indeed, we find no such confusion or uncertainty in the statutory scheme as to justify a debate revolving around the word "include." The trial court erred in its conclusion that the word "include" in § 7-1-600 (1) was controlling in this matter, and in its theory that since the use of "include" in the earlier portion of that paragraph indicates the interchangeability of the term "bank" with its components, "include" must, consistently and necessarily, mean the same in the last sentence of the same paragraph. This word is too ambiguous to control as sophisticated a scheme as the regulatory statutes; indeed, to avoid such a situation as has evolved in the instant case is the very reason that the last phrase was added. The word "bank," as used in the last sentence of § 7-1-600 (1), does not "include" "branch bank," so as to be "interchangeable" in meaning; "*the context indicates that it does not.*" (Emphasis supplied.)

Careful examination of the statutes reveals that any perceived uncertainty as to the shifting meaning of the phrase " 'Bank' shall include . . . 'branch bank' " in § 7-1-600 (1) is immediately resolved in the same statute, in the definitions of "branch bank" and "parent bank." OCGA § 7-1-600 (5) defines " '[b]ranch bank' " as "*any additional . . . place of business of any parent bank located in a county other than* in the county . . . wherein the *parent bank* is situated." (Emphasis supplied.) OCGA § 7-1-600 (8) defines "[p]arent bank" as "the principal place of business where the general business of each *bank* shall be transacted in the particular city, town, or village specified in its articles." (Emphasis supplied.) Construing these definitions together, the term "branch bank" cannot mean the same as the word "bank," for the *parent bank* is the principal place of business of "*each bank*" in a particular city, town, or village, and a "*branch bank*" is "*an additional place of business*" in *a county other than* that in which the "parent bank" is located. Further, a "bank office" is an additional place of business conducting complete operations in the same county as a parent or branch (§ 7-1-600 (4)); and a "bank facility" is an additional place of business conducting limited operations in the same county as either the parent bank *or* the branch bank (§ 7-1-600 (2)). See also OCGA § 11-1-201 (4), (7).

Thus the definitional scheme of the entire statute plainly creates a pyramidal structure, in which the general business of the *bank* is

conducted in a specified place by a *parent bank*; a *branch bank* is a branch of the parent in another county; and additional *bank offices* or *bank facilities* may be established in the county either of the parent or of a branch.

This pyramidal construction of § 7-1-600 is confirmed at § 7-1-620 (3), which incorporates § 7-1-600, and elaborates: " 'Banking office' means any parent bank, *branch bank*, or bank office as such terms are defined in Code Section 7-1-600, or any other office at *which a bank accepts deposits. . . .*" (Emphasis supplied.) A branch bank is thus a "banking office" of the *bank*, "at which the bank accepts deposits," and the *bank* thus comprises its banking offices — parent, branch, or other facility. If there is any vagueness or confusion in § 7-1-600 as to whether "branch bank" and "bank" are interchangeable terms, § 7-1-620 (3) dispels it.

The same distinction in terms regarding the establishment of branch offices and facilities is shown in § 7-1-602 (e) (as amended), where it is provided that a *"merger or consolidation of two or more banks . . . where all of the constituent banks shall have* either a parent bank or a branch bank located in the same county, then the *surviving or resulting bank* shall be the parent bank and *may . . . operate* any or all places of business of each constituent bank *as either a branch bank*, a bank office, or a bank facility. . . . [W]here both the *selling and the purchasing banks shall have* either a parent bank or *branch bank* in the same county, then the purchasing bank shall be the parent bank and *may . . . operate any or all places of business of the selling bank as either a branch bank*, a bank office, or a bank facility, as is consistent with and may be authorized by this part [18]." (Emphasis supplied.)

The meaning of the term "bank" is proven in the context of the language in section 606 (e) referring to the commissioner's approval of a bank holding company's "acquir[ing] control of a *bank.*" (Emphasis supplied.) This language originates in § 7-1-605 (a) (2) (A), which provides that a bank holding company has "control" over *a bank* if it "controls, or has power to vote 25 percent or more of any class of *voting securities of the bank* or company." In this context "bank" is clearly the chief, or entire, operation in which stocks and securities inhere. A branch bank has no voting securities; its operation is controlled by the parent bank. See § 7-1-601 (a).

Furthermore, the word "acquire" as applied to a bank holding company consistently means, *inter alia*, the acquisition of the ownership or control of "voting shares of another . . . bank if, after such acquisition, such bank holding company will directly or indirectly own or control more than 5 percent of any class of voting shares of such . . . bank." OCGA § 7-1-620 (1) (B). If "acquisition" of "control" of a *bank* is accomplished by acquisition of control of the stock

of the *bank*, the term "bank" cannot mean "branch bank," which has no controlling shares of its own but is controlled by its parent bank (§ 7-1-601 (a)), which is the principal place of business of the *"bank"* (§ 7-1-600 (8)) in a particular place.

When all of these statutory mandates are harmonized so that "bank" has a consistent meaning with regard to merger or consolidation, or acquisition of control of a "bank," it becomes plain that where § 7-1-601 (c) (1) speaks of establishment of a branch bank "through merger or other consolidation [with a *bank*] pursuant to [§ 7-1-606 (e)]," it means merger of the entire bank operation, including parent, all branches, and all other facilities *"at which a bank accepts deposits."* (Emphasis supplied.) OCGA § 7-1-620 (3).

This construction is again confirmed within § 7-1-606 (e), which refers to the approval of a holding company's *"acquir[ing] control of a bank,"* by which means it may then *"merge or consolidate such bank* with another of such bank holding company's banking subsidiaries or have another of such bank holding company's banking subsidiaries acquire all or substantially all of the assets of such *bank* and consequently operate as a *branch* of such other banking subsidiary." The word "bank" means the entire bank operation, including parent, branches, and bank offices *"at which a bank accepts deposits"* (§ 7-1-620 (3)), even if such "bank" comprises but one office which can be operated as a branch of the acquirer. (Emphasis supplied.) No other construction of the term "bank" can be inferred, for the § 606 (e) references to *"acquiring control of a bank,"* and merging or consolidating "such bank" (see also § 602 (e)), mean acquiring control of its stock (§ 7-1-620 (1) (A)) or otherwise of its assets.

In short, the context of Section 601 (c) (1), Section 602 (e), and Section 606 (e) consistently indicates that the term "branch bank" is not necessarily *interchangeable* with "bank." Nothing in those Code sections, or any other, expresses or implies any intent to permit approval of a bank holding company's merging or consolidating with, or acquiring control of, a branch bank by itself without merging or consolidating with, or acquiring control of, the entire bank (through acquiring control of its stock or assets); § 7-1-620 (1)), *including all the parent banks, branch banks or bank offices "at which a bank accepts deposits."* OCGA § 7-1-620 (3).

The trial court especially limited itself to a ruling that the Department of Banking & Finance did not "[violate] any statutory authority when it approved these applications," and that the statute authorizes the Department to approve Bank Corporation of Georgia's proposal to purchase one branch of another bank and operate it as a subsidiary. If the legislature had intended such a result, so inconsistent with the stringent regulation it has exercised over the establishment of branch banks generally, it would have been careful to state it.

See *Independent Bankers Assn. v. Dunn*, 230 Ga. 345, 360-361 (197 SE2d 129) (1973). Since it did not, we cannot make such an inference; the context of the statutes does not allow us to do so. What may not be clear in § 606 (e) alone is made crystal-clear when studied in light of the entire statutory scheme of Title 7, particularly §§ 620 (3); 620 (1) (B); 602 (e); 600 (1); and 606 (c) (1). As to the construction of statutes generally, see OCGA § 1-3-1 et seq.

*Judgment reversed. Benham and Beasley, JJ., concur. Birdsong, J., disqualified.*

DECIDED NOVEMBER 2, 1989 —
REHEARING DENIED NOVEMBER 17, 1989 — 

*Martin, Snow, Grant & Napier, Edward J. Harrell, George C. Grant, Hylton B. Dupree, Jr.*, for appellant.

*Michael J. Bowers, Attorney General, Harrison W. Kohler, Deputy Attorney General, Verley J. Spivey, Senior Assistant Attorney General, Amelia W. Baker, Staff Assistant Attorney General, Kilpatrick & Cody, Susan A. Cahoon, Richard R. Cheatham*, for appellees.