A03A0303. CHATHAM ORTHOPAEDIC SURGERY CENTER, LLC et al. v. GEORGIA ALLIANCE OF COMMUNITY HOSPITALS, INC.
(585 SE2d 700)

PHIPPS, Judge.

A professional association of orthopedic surgeons formed two business entities to operate an ambulatory surgery center. The State Health Planning Agency permitted them to build and operate the surgery center without obtaining a certificate of need, an action which an association of hospitals opposed. As a result of that opposition, the surgeons sued the hospital association for tortious interference with business relations. The association moved to dismiss on the ground that the complaint had not been verified as required by Georgia's Anti-Strategic Lawsuits Against Public Participation Statute (codified at OCGA § 9-11-11.1 and referred to as the anti-SLAPP statute). The surgeons later filed a notice of voluntary dismissal without prejudice and then brought a new suit asserting the same claim. The question is whether the first suit could be dismissed "without prejudice." We hold that, under the facts of this case, it could not.

Chatham Orthopaedic Associates, PA (Chatham) formed Chatham Orthopaedic Surgery Center, LLC (COSC) for the purpose of owning and operating a freestanding ambulatory surgery center in Savannah. COA Investment Company, LLC (COA) was formed for the purpose of purchasing and owning the real property and building from which the surgery center was to operate. The members of Chatham, COSC, and COA are physicians practicing in the specialty of orthopedic surgery in Savannah. The Georgia Alliance of Community Hospitals, Inc. (the Alliance) is a nonprofit Georgia corporation and industry association whose membership is comprised of private nonprofit and public community hospitals throughout the state.

Chatham applied to the Georgia Division of Health Planning (DHP) for a Letter of Non-Reviewability (LNR) to construct and equip the surgery center without a certificate of need (CON).[1] DHP issued the LNR. The Alliance challenged the LNR on the ground that the surgery center could not lawfully be exempted from CON review. DHP agreed with the Alliance and rescinded the LNR. After Chatham revised its project, DHP issued a second LNR to Chatham. The Alliance challenged the issuance of the second LNR, but DHP refused to rescind it. The Alliance then filed a mandamus action in the Superior Court of Fulton County, complaining of DHP's issuance of the LNR for the surgery center without enforcing the CON law.

On October 23, 2000, COSC and COA sued the Alliance in the Superior Court of Tift County, alleging that the Alliance had tortiously interfered with Chatham's business relations by, among other things, challenging the first and second LNR and suing DHP. On November 21, the Alliance answered and moved to dismiss. Among other things, the Alliance asserted that the complaint was barred because the claim asserted fell within the ambit of the anti-SLAPP statute, and no verification had been filed with the complaint as required by OCGA § 9-11-11.1 (b). On December 22, the Alliance agreed to extend the time for a response to its motion to dismiss until January 22, 2001. On January 19, COSC and COA filed a voluntary dismissal without prejudice under OCGA § 9-11-41 (a).

In March 2001, COSC, COA, and Chatham (referred to as the Chatham entities) filed the present complaint against the Alliance in the Superior Court of Tift County. The allegations are virtually identical to those in the prior complaint, and the present complaint was accompanied by the requisite verifications. The Alliance again answered and moved to strike or dismiss the complaint.

The superior court ruled that the claims asserted in this litigation are subject to the anti-SLAPP statute and that by operation of

---

[1] See OCGA § 31-6-40 et seq.

law dismissal of the earlier suit was with prejudice. As authority for the latter conclusion, the court relied on *Davis v. Emmis Publishing Corp.*[2] and *Hawks v. Hinely*,[3] which hold that a failure to file timely verifications of a complaint as required by Georgia's anti-SLAPP statute is a nonamendable defect requiring dismissal of the complaint with prejudice. As a result, the trial court in this case ordered the present complaint stricken as it relates to COSC and COA (the plaintiffs in the prior action). Because Chatham is a privy of COSC and COA, the court ordered that judgment on the pleadings be granted to the Alliance against Chatham on the ground of res judicata. The Chatham entities appeal.

1. The stated purpose of the anti-SLAPP statute is "to encourage participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition government for redress of grievances."[4] "With the anti-SLAPP statute, the General Assembly sought to prevent the chilling effect that abusive lawsuits would have on the valid exercise of these rights. [Cit.]"[5] The anti-SLAPP statute broadly applies to

> any claim asserted against a person or entity arising from an act by that person or entity which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern. . . .[6]

Therefore, unlike other states' anti-SLAPP statutes, Georgia's is not limited to actions brought by or against particular classes of parties.[7] "[T]he central question under the statute is whether the claim is based on an act reasonably construed to be in furtherance of the rights of free speech or petition."[8] Such an act "includes" (and is thus not limited to)

> any written or oral statement, writing, or petition made before or to a legislative, executive, or judicial proceeding, or

---

[2] 244 Ga. App. 795, 797 (3) (536 SE2d 809) (2000).

[3] 252 Ga. App. 510, 516 (2) (556 SE2d 547) (2001).

[4] OCGA § 9-11-11.1 (a); *Hawks v. Hinely*, supra at 512 (1) (a).

[5] *Hawks v. Hinely*, supra.

[6] OCGA § 9-11-11.1 (b).

[7] See Georgia's New Anti-SLAPP Statute, Kent and Isenberg, 1997 Ga. Bar J. (June 1997), p. 28.

[8] *Denton v. Browns Mill Dev. Co.*, 275 Ga. 2, 6 (561 SE2d 431) (2002).

any other official proceeding authorized by law, or any written or oral statement, writing, or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.[9]

The Chatham entities instituted this litigation because of the Alliance's challenge to DHP's approval of their surgery center without a CON by, among other things, filing a mandamus action against the agency. The Alliance's conduct, even if tortious,[10] certainly could be viewed as an action in furtherance of its right to petition the government for a redress of grievances in connection with an issue of public interest and concern.[11] Consequently, the trial court did not err in ruling that this litigation is subject to the anti-SLAPP statute.[12]

2. The anti-SLAPP statute requires both the party asserting the claim and the party's attorney of record, if any, to file, contemporaneously with the pleading containing the claim, a written verification under oath certifying

that the party and his or her attorney of record, if any, have read the claim; that to the best of their knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the act forming the basis for the claim is not a privileged communication under paragraph (4) of Code Section 51-5-7; and that the claim is not interposed for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation.[13]

OCGA § 9-11-11.1 (b) states that if a claim subject to the anti-SLAPP statute is not verified, "it shall be stricken unless it is verified within ten days after the omission is called to the attention of the

---

[9] OCGA § 9-11-11.1 (c).

[10] See *Denton v. Browns Mill Dev. Co.*, supra at 5 (OCGA § 9-11-11.1 does not sanction conduct that is otherwise tortious, but merely provides a measure of procedural protection).

[11] See OCGA § 31-6-1 et seq.; *Diversified Health Mgmt. Svcs. v. Visiting Nurses Assn.*, 254 Ga. 500, 502 (4) (330 SE2d 885) (1985).

[12] See generally *Metzler v. Rowell*, 248 Ga. App. 596, 597 (1) (547 SE2d 311) (2001).

[13] OCGA § 9-11-11.1 (b); *Hawks v. Hinely*, supra at 514 (1) (c).

party asserting the claim." OCGA § 9-11-11.1 (b) goes on to provide that if a claim is verified in violation of OCGA § 9-11-11.1,

> the court, upon motion or upon its own initiative, shall impose upon the persons who signed the verification, a represented party, or both an appropriate sanction which may include dismissal of the claim and an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

All discovery and any pending hearings or motions in the action shall be stayed upon the filing of a motion to dismiss or a motion to strike made pursuant to OCGA § 9-11-11.1 (b).[14] "The motion shall be heard not more than 30 days after service unless the emergency matters before the court require a later hearing."[15]

In *Davis* and *Hawks*, the plaintiffs did not file the required verifications until more than ten days after they had been notified of the deficiency. The trial court in *Davis* refused to dismiss, ruling that plaintiff's failure to file the statutorily required verifications in a timely manner was an amendable defect. We reversed, holding that although the failure to verify a complaint is generally an amendable defect, so that a reasonable time may be allowed for a defective pleading to be amended, the anti-SLAPP statute, by its own terms, sets ten days as a reasonable time to allow for the late filing of the verifications and explicitly mandates that the claim "shall be stricken" if the verification is not filed within that period. We later recognized in *Hawks* that a dismissal pursuant to OCGA § 9-11-11.1 (b) — either because a verification was not timely filed or because a deficient verification was not timely corrected — operates as a dismissal with prejudice.[16]

In their earlier suit the Chatham entities did not file verifica-

---

[14] OCGA § 9-11-11.1 (d).

[15] Id.

[16] *Hawks v. Hinely*, supra at 515-516 (1) (c), (2). Cf. *Jordan, Jones & Goulding v. Balfour Beatty Constr.*, 246 Ga. App. 93 (1) (539 SE2d 828) (2000) (holding that under the terms of OCGA § 9-11-9.1 (the statute requiring the filing of an expert affidavit contemporaneously with a complaint alleging professional malpractice), as amended in 1997, the failure to file a required affidavit or the filing of a defective affidavit subjects the complaint to dismissal with prejudice); but cf. *Patterson v. Douglas Women's Center*, 258 Ga. 803, 804 (374 SE2d 737) (1989) (holding that under OCGA § 9-11-9.1, as originally enacted in 1987, failure to file the required affidavit contemporaneously with the complaint did not render the complaint void ab initio, so that, after defendants had moved to dismiss for failure to file the affidavit, the plaintiff could voluntarily dismiss the action and then renew it under OCGA § 9-2-61 (a)). In *Sawyer v. DeKalb Med. Center*, 234 Ga. App. 54, 55 (1) (506 SE2d 197) (1998), we later recognized that the General Assembly amended OCGA § 9-11-9.1 in 1989 to carve out an exception to *Patterson*.

tions of their complaint within ten days after the omission was called to their attention. The Alliance later agreed to extend the 30-day time period within which the Chatham entities were required to respond to its motion to dismiss, but that occurred after the ten-day window for verifying the complaint had expired. Under *Davis* and *Hawks*, COSC and COA's failure to file timely verifications of their earlier complaint constituted a nonamendable defect requiring dismissal of the complaint with prejudice.

It is true that OCGA § 9-11-41 (a) generally allows a plaintiff to dismiss an action without prejudice by filing a written notice of dismissal at any time before the plaintiff rests his case, if no counterclaim has been pleaded by a defendant.[17] But by the express terms of OCGA § 9-11-41 (a), this privilege is "[s]ubject to the provisions . . . of any statute," such as OCGA § 9-11-11.1. Contrary to argument advanced by the Chatham entities, they thus had no absolute right to voluntarily dismiss their prior suit without prejudice under OCGA § 9-11-41 (a).

Consequently, the trial court did not err in ruling that, by operation of law, the Chatham entities' dismissal of their prior action was with prejudice.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JULY 15, 2003 — 

*Brennan, Harris & Rominger, Mason White, Morris, Manning & Martin, Robert C. Threlkeld, Tara L. Adyanthaya*, for appellants.

*Parker, Hudson, Rainer & Dobbs, John H. Parker, Jr., Thomas D. Watry, Jonathan L. Rue, Sims, Fleming & Benson, John S. Sims, Jr.*, for appellee.

---

[17] *LeRoux v. Levine*, 194 Ga. App. 381 (390 SE2d 629) (1990).