## S06G0038. BERRYHILL v. GEORGIA COMMUNITY SUPPORT AND SOLUTIONS, INC.
### (638 SE2d 278)

CARLEY, Justice.

Georgia Community Support and Solutions, Inc. (GCSS), a non-profit organization which assists disabled adults and their families, placed Shirley Berryhill's mentally handicapped son with providers of personal care. Subsequently, in a web posting and in e-mails to employees of a major newspaper and of the Department of Human Resources, Ms. Berryhill asserted that her son was suffering from poor treatment and care. When she failed to comply with its demand for a retraction and apology, GCSS brought suit for tortious interference with business relationship and libel per se. GCSS submitted the verifications required by Georgia's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute. OCGA § 9-11-11.1 (b). The trial court dismissed the action, finding, among other things, that Ms. "Berryhill's statements satisfied the threshold requirement for applicability of the anti-SLAPP statute because they 'were made in furtherance of her right to free speech about an issue of public concern. . . .' " *Georgia Community Support & Solutions v. Berryhill,* 275 Ga. App. 189, 191-192 (1) (620 SE2d 178) (2005). The Court of Appeals reversed, holding that "[t]he anti-SLAPP statute does not encompass all statements that touch upon matters of public concern. Rather, by its terms, the statute's application is limited to" those statements which come within the definition found in OCGA § 9-11-11.1 (c). *Georgia Community Support & Solutions v. Berryhill,* supra at 192 (1). This Court granted certiorari to consider that issue. Because the Court of Appeals properly construed the anti-SLAPP statute, we affirm.

The verification requirement of OCGA § 9-11-11.1 (b) applies to any claim asserted against a person or entity arising from an act "which could reasonably be construed as an act in furtherance of the

right of free speech or the right to petition government for a redress of grievances . . . in connection with an issue of public interest or concern. . . ." Under the definition of subsection (c), such act

> includes any written or oral statement, writing, or petition made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or any written or oral statement, writing, or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.

Ms. Berryhill argues that the word "includes" in this statute should be broadly construed as a term of enlargement or illustration. In support of this argument, the only precedent from this Court on which she relies is *Housing Auth. of City of Carrollton v. Ayers*, 211 Ga. 728, 729 (3) (a) (88 SE2d 368) (1955), which notes that "a statutory definition of a term as 'including' certain things does not *necessarily* put a meaning thereon limited to the inclusion. [Cit.]" (Emphasis supplied.) See also *Arizona Water Co. v. Ariz. Dept. of Water Resources*, 770 P2d 370, 373 (Ariz. App. 1988) (placing the same emphasis in a nearly identical quote). As the Court of Appeals has stated, "[t]he word 'includes' is susceptible of meaning, inter alia, either 'encompasses' or 'is equivalent to' . . . ." *Community Bankers Assn. of Ga. v. First Nat. Bank of Commerce*, 193 Ga. App. 569, 571 (2) (388 SE2d 387) (1989). This principle is consistent with the case law in numerous other jurisdictions. "It is generally held that the meaning of the words 'including' or 'includes' depends upon the context and that sometimes they are not words of illustration or enlargement. [Cits.]" *Housing Auth. of Baltimore City v. Bennett*, 754 A2d 367, 375 (III) (A) (Md. 2000). "[T]he word 'include' is also commonly used in a restrictive, limiting sense. [Cits.]" *Auer v. Commonwealth*, 621 SE2d 140, 144 (II) (Va. App. 2005).

In *Helvering v. Morgan's, Inc.*, 293 U. S. 121, 125 (55 SC 60, 79 LE 232) (1934), the Supreme Court of the United States recognized "that the term 'includes' may sometimes be taken as synonymous with 'means' . . . ." See also *Housing Auth. of Baltimore City v. Bennett*, supra. The Supreme Court has also pointed out that the word " 'may have the sense of addition . . . and of "also;" but . . . may "merely specify particularly that which belongs to the genus." ' *Montello Salt Co. v. Utah*, 221 U.S. 452, 464-65, 31 S. Ct. 706, 708, 55 L.Ed. 810, 814 (1911) . . . ." *Arizona Water Co. v. Ariz. Dept. of Water Resources*, supra. Dictionary authority is consistent with this construction of the term "includes."

Bryan A. Garner, *A Dictionary of Modern American Usage* 363 (1998) (remarking that the word "include," "which traditionally has introduced a nonexhaustive list, is now . . . widely ( ) used for *consists of*"). Used in this limiting sense, the term typically introduces an exhaustive list of all of the components or members that make up the whole. See Garner, supra; *Random House Webster's College Dictionary* 667-68 (2000) . . . . Thus, when a statute uses the word "include" in this restrictive, limiting sense to define a term, it sets forth the entire definition, and no other elements or items are includable. Consequently, the fact that the statute does not expressly enumerate a particular item implies that the item "falls outside of the definition." [Cits.] (Emphasis in original.)

*Auer v. Commonwealth*, supra. See also *Housing Auth. of Baltimore City v. Bennett*, supra (quoting Black's Law Dictionary (5th ed. 1979)).

The word "includes" "in and of itself is not determinative of how it is intended to be used. [Cit.]" *Frame v. Nehls*, 550 NW2d 739, 742 (Mich. 1996). Whether the term may be interpreted as one of limitation depends on the context, "the subject matter, and legislative intent. [Cits.] Thus, for example, where a general term is followed by the word 'including,' which is itself followed by specific terms, the intent may be one of limitation. [Cits.]" *State Public Defender v. Iowa Dist. Ct. for Black Hawk County*, 633 NW2d 280, 283 (III) (Iowa 2001). In the definition set forth in OCGA § 9-11-11.1 (c), the language "act in furtherance of the right of free speech or the right to petition government for a redress of grievances . . . in connection with an issue of public interest or concern," the general phrase, is followed by the word "includes," which is itself followed by specific phrases, "any written or oral statement, writing, or petition made before or to . . . , or . . . in connection with an issue under consideration or review by[,] a legislative, executive, or judicial body, or any other official proceeding . . . ." Therefore, it clearly is reasonable to read the word "includes" as meaning "is equivalent to," and to conclude that the specific phrases in subsection (c) set forth the entire definition.

In context, this construction is by far the most reasonable. Courts should give a sensible and intelligent effect to every part of a statute and not render any language superfluous. *R. D. Brown Contractors v. Bd. of Education of Columbia County*, 280 Ga. 210, 212-213 (626 SE2d 471) (2006); *Costin v. State*, 269 Ga. App. 632, 633 (605 SE2d 73) (2004). A broad construction of the term "includes" would render the specific phrases in OCGA § 9-11-11.1 (c) superfluous. The particular acts specified, namely written or oral statements or petitions related

to an official proceeding, obviously further the right of free speech or to petition the government in connection with an issue of public interest or concern. Thus, it was wholly unnecessary for the legislature to state that the general phrase encompasses such particular acts. It was, however, totally necessary to specify those acts if the legislature intended thereby to place some reasonable limitation on the scope of the anti-SLAPP statute. Furthermore, the General Assembly could have added, but did not add, catchall language at the end of OCGA § 9-11-11.1 (c), as in the comparable California and Louisiana anti-SLAPP statutes. West's Ann. Cal. C.C.P. § 425.16 (e); LSA-C.C.P. Art. 971 (F) (1). More importantly, if the legislature had intended to use the word "includes" as a broad term of illustration or enlargement, it presumably would have appended the phrase "but is not limited to," just as it supplied the phrase "but not limited to" after the word "including" in subsection (f) of the very same anti-SLAPP statute being construed in this case. See LSA-C.C.P. Art. 971 (F) (1) ("includes but is not limited to"). Accordingly, the Court of Appeals was mistaken in *Chatham Orthopaedic Surgery Center v. Ga. Alliance of Community Hospitals*, 262 Ga. App. 353, 355 (1) (585 SE2d 700) (2003), when it supplied the phrase "and is thus not limited to" in a parenthetical dictum. Where, as here, "the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended. [Cit.]" 2A Norman J. Singer, Statutes and Statutory Construction § 46:06, p. 194 (6th ed. 2000). Therefore, *Chatham Orthopaedic Surgery Center v. Ga. Alliance of Community Hospitals*, supra is overruled.

The Court of Appeals properly determined that there was not any evidence of an actual official proceeding either before or after the statements in question. Thereafter, the Court of Appeals considered the alternative possibility that merely seeking to initiate official proceedings by making certain statements was sufficient to bring those statements within the language of OCGA § 9-11-11.1 (c). As the Court of Appeals found, however, even if that generally were a viable alternative, the plaintiff here was still not entitled to the statutory anti-SLAPP protection, since nothing in her statements can be construed as a request for any official investigation or proceeding. *Georgia Community Support & Solutions v. Berryhill*, supra. Consistent with the Court of Appeals' opinion, we recognize that, for the provisions of OCGA § 9-11-11.1 to be activated, the necessary statement is not required to constitute a petition for redress of grievances, but may instead relate to an official proceeding instigated by someone else and constitute an act in furtherance of the right of free speech.

Ms. Berryhill did not perform any act which could reasonably be construed as a statement or petition within the definition of OCGA § 9-11-11.1 (c), as properly interpreted. The Court of Appeals correctly

refused to expand the scope of the anti-SLAPP statute beyond its terms so as to encompass a wide range of speech and conduct which is arguably connected with any issue of public interest or concern.

*Judgment affirmed. All the Justices concur, except Sears, C. J., Hunstein, P. J., and Benham, J., who dissent.*

BENHAM, Justice, dissenting.

Because I believe the decision of the Court of Appeals in this case improperly limits the scope of acts protected by OCGA § 9-11-11.1, I must respectfully dissent to the majority's affirmance of that decision. Berryhill's actions in this case were to post a message on a website for families of disabled adults and to send the message by e-mail to the Atlanta Journal Constitution, regulatory personnel of the Department of Human Resources, and private individuals, complaining that her son was receiving poor treatment and care. She has contended she sent the messages in a good faith belief they would spark an investigation of her son's care and the trial court found that her statements to regulatory personnel at the Department of Human Resources constituted petitioning the government for redress of grievances. Without any discussion of the evidence on which the trial court based that finding, and with no deference to the trial court's findings, the Court of Appeals held that her statements could not be construed as a request for any official investigation or proceeding. A majority of this Court has now adopted that holding, still without according to the trial court's findings the deference generally accorded to factfinders. I disagree with that holding and with the restriction of protected acts to those which are made in the context of or in pursuit of official proceedings.

To explain the restrictions it placed on the protections of the anti-SLAPP statute, the Court of Appeals made two key holdings in the decision under review. First, it held OCGA § 9-11-11.1 "defines" the acts to which the anti-SLAPP statute applies as

> any written or oral statement, writing, or petition made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or any written or oral statement, writing, or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law. [Cit.]

*Georgia Community Support & Solutions v. Berryhill*, 275 Ga. App. 189, 190 (620 SE2d 178) (2005). Second, the decision stated:

> The anti-SLAPP statute does not encompass all statements that touch upon matters of public concern. Rather, by its terms, the statute's application is *limited* to statements "made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or any . . . statement . . . made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." [Cit.]

(Emphasis supplied.) Id. at 192 (1). Both of those holdings narrow the scope of the anti-SLAPP statute by reading the word "includes" as an expression of limitation, a narrowing I believe was improper.

The statute protects

> an act . . . which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern. . . .

OCGA § 9-11-11.1 (b). Subsection (c) of the statute provides that such act

> *includes* any written or oral statement, writing, or petition made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or any written or oral statement, writing, or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.

(Emphasis supplied.) "In all interpretations of statutes, the ordinary signification shall be applied to all words. . . ." OCGA § 1-3-1 (b). The American Heritage Dictionary of the English Language (4th ed., 2004, Houghton Mifflin Company), includes in its definitions of the word, "include," "To contain as a secondary or subordinate element." In its discussion of usage, that dictionary notes that *Include* often implies an incomplete listing." Id. Black's Law Dictionary (8th ed. 2004), contains this definition and comment:

> include, vb. To contain as a part of something. The participle "including" typically indicates a partial list: *the plaintiff asserted five tort claims, including slander and libel.* But some drafters use phrases such as *including without limitation* and *including but not limited to* — which mean the same thing. (punctuation modified for clarity)

As this Court noted in *Housing Auth. of City of Carrollton v. Ayers*, 211 Ga. 728, 729 (88 SE2d 368) (1955), "a statutory definition of a term as 'including' certain things does not necessarily put a meaning thereon limited to the inclusion. [Cit.]" Similarly, the U. S. Supreme Court said in *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U. S. 95, 100 (62 SC 1, 86 LE 65) (1941), "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." The term "includes" is ordinarily a word of enlargement and not of limitation. *North Carolina Turnpike Auth. v. Pine Island, Inc.*, 265 N.C. 109, 120 (143 SE2d 319) (1965). The Court of Appeals properly applied the word that way in the context of the anti-SLAPP statute in *Chatham Orthopaedic Surgery Center v. Ga. Alliance of Community Hospitals*, 262 Ga. App. 353 (1) (585 SE2d 700) (2003), where it noted that an act in furtherance of the rights of free speech or petition " 'includes' (and is thus not limited to)" the specific communications listed in OCGA § 9-11-11.1 (c). The majority now disapproves of the decision in *Chatham Orthopaedic Surgery Center* by relegating its interpretation of the statute to the status of a dictum. However,

> [a] dictum is an opinion expressed by a court, but which, not being necessarily involved in the case, lacks the force of an adjudication; an opinion expressed by a judge on a point not necessarily arising in the case; a statement or holding in an opinion not responsive to any issue and not necessary to the decision of the case; . . . [Cit.]

*Cullers v. Home Credit Co.*, 130 Ga. App. 441, 449 (203 SE2d 544) (1973). I do not believe that an appellate court's explanation of the scope of a statute it is construing can fairly be considered "a point not necessarily arising in the case . . ." so as to make that explanation dismissible as a dictum.

In addition to being unsupported by the language of the statute, the narrow construction of the statute approved by the majority is undesirable as a matter of public policy. Requiring that an official proceeding be underway on the subject of the statements or that the statements be successful in bringing about an official proceeding eliminates the protection needed to encourage public disclosure of wrongdoing and frustrates the General Assembly's declared purpose in enacting the anti-SLAPP statute, "to encourage participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition government for redress of grievances." OCGA § 9-11-11.1 (a). That public policy is not advanced by placing rigid restrictions on the scope of its protection so that only statements

made directly in the course of an official proceeding or statements expressed skillfully enough and directed accurately enough that an appellate court cannot ignore their intent are within the protection of the statute.

The limitation imposed by the decision of the Court of Appeals and approved by the majority effectively writes out of the statute the references to the right of free speech by requiring that an act entitled to protection under the statute amount to a request for government proceedings to be initiated,[1] which is a petition to government for the redress of grievances. That the statute does not contain such a requirement may be seen from the fact that it twice joins the phrases "right of free speech" and "right to petition government" with the disjunctive "or." OCGA § 9-11-11.1 (b), (c). Had the General Assembly intended the statute to provide protection only to acts which amount to petitioning the government for redress of grievances, the phrases would have been made conjunctive, or the reference to freedom of speech would have been omitted completely. The inclusion of the phrase "right of free speech" indicates the General Assembly did not intend to limit the coverage of the statute to acts amounting to a petition to government, and the contrary holding in the decision of the Court of Appeals, approved implicitly by the majority, was incorrect.

The limitations placed on the scope of the anti-SLAPP statute by the Court of Appeals and by the majority of this Court have eviscerated the protections of the statute. Exercising one's right of free speech on matters of public concern, and it cannot credibly be argued that matters regulated by the government are not matters of public concern, has now lost the protection intended by the General Assembly in its passage of the anti-SLAPP statute. The citizens of Georgia are the poorer for that loss, and I cannot join in an opinion which effects that deprivation. Accordingly, I must dissent.

I am authorized to state that Chief Justice Sears and Presiding Justice Hunstein join in this dissent.

DECIDED NOVEMBER 28, 2006 —
RECONSIDERATION DENIED DECEMBER 15, 2006.

*Torin D. Togut*, for appellant.

---

[1] Nor is there any evidence that Berryhill sought to initiate an official proceeding by making the statements. Although she stated in her affidavit that she hoped her e-mails would prompt the Atlanta Journal-Constitution and Georgia Department of Human Resources to look into GCSS's treatment and care of her son, nothing in the e-mails can be construed as a request for any official investigation or other proceeding.

*Georgia Community Support & Solutions v. Berryhill*, supra, 275 Ga. App. at 192.

*Richard E. Witterman, Jr.*, for appellee.
*Gerald R. Weber, Jr., Elizabeth L. Littrell, Margaret F. Garrett*, amici curiae.