**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 18, 2013**

# In the Court of Appeals of Georgia

A12A1841. EMORY UNIVERSITY, et al. v. METRO ATLANTA   RA-083
    TASK FORCE FOR THE HOMELESS, INC.

A12A1842. METRO ATLANTA TASK FORCE FOR THE   RA-084
HOMELESS, INC. v. EMORY UNIVERSITY, et al.

RAY, Judge.

These cross-appeals stem from a complaint filed by Metro Atlanta Task Force for the Homeless, Inc. ("Metro") which asserted claims against Emory University and Emory Healthcare, Inc. ("Emory") for tortious interference with business and contractual relations, violation of the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act, and defamation. Emory moved to dismiss or to strike the complaint based on Metro's failure to comply with the verification requirements of OCGA § 9-11-11.1, Georgia's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute. Metro then filed verifications "out of an abundance of caution."

After a non-evidentiary hearing, the trial court denied the motion to dismiss or to strike the complaint, finding that the claims did not come within the scope of the anti-SLAPP statute. The trial court further found that, had the anti-SLAPP statute applied, Metro had been placed on notice of such defense at the time of Emory's answer and that Metro's subsequent filing of the verifications was untimely. Emory filed a request for a certificate of immediate review, but Metro voluntarily dismissed its complaint without prejudice before the trial court could address the request. Emory then filed a motion to strike the voluntary dismissal, which the trial court denied.

The cross-appeals in the instant action are consolidated for our review. In Case No. A12A1841, Emory contends that the trial court erred (1) in denying its motion to dismiss or to strike the complaint for failure to timely file the verifications required under OCGA § 9-11-11.1 and (2) in denying its motion to strike Metro's voluntary dismissal without prejudice. In Case No. A12A1842, Metro contends that the trial court erred in determining that Emory's answer placed Metro on notice of the OCGA § 9-11-11.1 defense, thus making Metro's subsequent verifications untimely if the anti-SLAPP statute applies in this case. For the reasons that follow, we affirm the judgment in Case No. A12A1841 and dismiss as moot the appeal in Case No. A12A1842.

2

On appeal, we conduct a de novo review of the denial of a motion to dismiss.[1] In reviewing the trial court's order, "we construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor."[2]

The complaint indicates that Metro is a non-profit enterprise that relies on government grants and private donations to provide shelter and other services to the homeless population in Atlanta. In 1997, Metro obtained a 95,000 square-foot facility in which to base its operations on the corner of Peachtree and Pine streets in midtown Atlanta ("Peachtree Pine building"). Thereafter, Metro received $900,000 in loans from private entities to renovate the facility. These loans were secured by security deeds on the property.

In its complaint, Metro alleged that Emory initiated efforts to interfere with its business operations and oust it from the Peachtree Pine building. Metro generally alleged that Emory, acting alone or through unidentified co-conspirators, engaged in "deceptive, covert, and malicious actions designed to drive [Metro] from the Peachtree Pine building." The alleged actions included Emory's efforts to undercut

_____

[1] (Citation omitted.) *Center for a Sustainable Coast, Inc. v. Ga. Dept. of Natural Resources*, ___ Ga. App. ___ (734 SE2d 206) (2012).

[2] (Citation omitted.) Id.

3

public and private funding using a "defamatory propaganda campaign," as well as efforts to "deceptively purchase the notes on the Peachtree Pine building and oust [Metro] from the property through a foreclosure process." Metro further alleged that, as a consequence of these actions, it sustained a loss of public and private funding which resulted in its loss of title to the Peachtree Pine building. It is this alleged conduct that forms the general basis of each of the claims in the complaint.

*CASE NO. A12A1841*

1. Emory argues that the trial court erred in denying its motion to dismiss or strike the Metro's complaint because of the alleged untimely verifications. Specifically, Emory argues that the trial court erred in finding that the Anti-SLAPP statute does not apply to the claims asserted in Metro's complaint and that Metro was not required to file verifications in accordance with OCGA § 9-11-11.1 (b). Finding no error, we affirm.

"If the anti-SLAPP statute applies to a claim asserted in a complaint, and the plaintiff fails to timely file the required subsection (b) verifications, the defendant is entitled to have the claim stricken and the complaint dismissed."[3] However, where a

---

[3] (Citations omitted.) *Lovett v. Capital Principles, LLC*, 300 Ga. App. 799, 800 (686 SE2d 411) (2009).

4

complaint asserts multiple claims and allegations, only those claims that are based on an act that falls under the scope of the anti-SLAPP statute are afforded the procedural protections of the statute and are subject to its verification requirements.[4]

The purposes of Georgia's anti-SLAPP statute are to encourage citizens to participate in matters of public significance by exercising their constitutional rights to free speech and to petition the government for redress of grievances, and to prevent the chilling of those rights through abuse of the judicial process.[5] To those ends, the statute requires the timely filing of a written verification when the complaint asserts a claim "against a person or entity arising from an act by that person or entity which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances . . . in connection with an issue of public interest or concern."[6] The statute defines such an act as

> any written or oral statement, writing, or petition made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or any written or oral statement, writing,

---

[4] *Denton v. Browns Mill Dev. Co., Inc.*, 275 Ga 2, 6 (561 SE2d 431) (2002).

[5] OCGA § 9-11-11.1 (a); *Atlanta Humane Society v. Harkins*, 278 Ga. 451, 452 (1) (603 SE2d 289) (2004).

[6] OCGA § 9-11-11.1 (b).

5

or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.[7]

In denying Emory's anti-SLAPP motion to dismiss, the trial court found that claims did not fall within the scope of the anti-SLAPP statute because "the statements at issue in the [c]omplaint were made neither to any official proceeding authorized by law nor in connection with an issue under consideration by any official proceeding."

On appeal, Emory contends that the trial court's denial is in error and argues that two types of official proceedings were implicated by Metro's claims: (1) any legislative proceedings involving Metro's public funding, and (2) the foreclosure proceeding regarding the Peachtree Pine building. However, no specific legislative proceeding was identified in the record or mentioned in the pleadings, and there were no allegations or evidence that any statements were made in relation to the foreclosure proceeding involving the Peachtree Pine building.

For the procedural protections of the anti-SLAPP statute to apply, there must be a threshold showing that the claims could reasonably be construed as a statement

---

[7] OCGA § 9-11-11.1 (c).

6

or petition made in relation to or in connection with an actual official proceeding.[8] In this case, the actions and statements that form the basis of the claims are not specified in the complaint. Although Metro alleged that Emory used a "defamatory propaganda campaign" to undercut Metro's public and private funding, the pleadings do not identify who made the statements, who the recipients of the statements were, the date of the statements, the content of the statements, or the context in which the statements were made. The pleadings do not indicate that such statements were made in relation to a particular official proceeding or in connection with an issue under or about to be under consideration or review by such a proceeding. Nor do the pleadings indicate that Emory sought to initiate a particular official proceeding regarding a matter of public concern.[9] Furthermore, the complaint indicates that Metro's claims were also based, at least in part, on Emory's alleged "efforts to deceptively purchase the notes

---

[8] *Ga. Community Support & Solutions, Inc. v. Berryhill*, 275 Ga. App. 189, 192 (1) (620 SE2d 178) (2005), aff'd, *Berryhill v. Ga. Community Support and Solutions, Inc.*, 281 Ga. 439, 442 (638 SE2d 278) (2006) (Where there was no evidence of an *actual official proceeding* either before or after statements were made, and where the statements contained nothing that could be construed as a request for any official investigation or proceeding, the acts could not reasonably be construed as a statement or petition within the definition of the anti-SLAPP statute).

[9] Id.

on the Peachtree Pine building," which are actions that may not involve any official proceeding at all.

Emory concedes that the complaint was "extremely vague" with respect to the underlying facts on which Metro based its claims, but it argues that Metro should not be allowed to circumvent the requirements of the anti-SLAPP statute through vague and evasive pleading. This argument lacks merit.

Although OCGA § 9-11-11.1 (d) provides that all discovery and any pending hearings or motions in the action are stayed upon the filing of a motion to dismiss or a motion to strike based on a plaintiff's failure to file the verifications required by the anti-SLAPP statute, subsection (d) also provides that the trial court, upon motion, may lift the stay and "order that specified discovery or other hearings or motions be conducted." Thus, a party seeking to obtain additional facts or evidence to establish whether the anti-SLAPP statute applies could petition the court to do so.[10]

The Court notes that, at the time of the hearing on its anti-SLAPP motion, Emory had a pending motion to dismiss for failure to state a claim or, in the alternative, for a more definite statement. However, Emory did not petition the trial court to lift the stay to obtain a ruling on this motion, nor did it seek to avail itself of

---

[10] *Metzler v. Rowell*, 248 Ga. App. 596, 600-601 (3) (547 SE2d 311) (2001).

8

the specified discovery provisions of OCGA § 9-11-11.1 (d)" to obtain evidence for use in resolving [its] motion to dismiss pursuant to OCGA § 9-11-11.1 (b)."[11] Accordingly, Emory "cannot now raise this issue on appeal where [it] has failed to avail [itself] of this remedy in the trial court."[12]

Our analysis of the applicability of the anti-SLAPP statute to the claims in this case was limited by the generalized averments of the complaint and the vagueness of the claims contained therein. Thus, we cannot make a threshold finding that the statements or acts alleged in the complaint were made in relation to some official proceeding.[13] Accordingly, we find that the trial did not err in finding that the anti-SLAPP statute did not apply in this case; thus, the trial court did not err in denying Emory's motion to dismiss or strike the complaint.

2. Emory contends that the trial court erred in denying the motion to strike Metro's voluntary dismissal of the complaint, arguing that Metro's right to voluntarily dismiss its complaint is limited by the requirements of the anti-SLAPP

---

[11] (Citation omitted.) *Atlanta Humane Society*, supra at 453. See also *Lovett,* supra at 803 (Barnes, J., concurring specially).

[12] *Davis v. Emmis Pub. Corp.*, 244 Ga. App. 795, 796 (1) (536 SE2d 809) (2000).

[13] See *Georgia Community Support & Solutions, Inc.*, supra at 192 (1).

9

statute.[14] Based on our holding in Division 1, we find that Metro was authorized to voluntarily dismiss its complaint under OCGA § 9-11-41 (a). We discern no error.

*CASE NO. A12A1842*

3. In light of our holding in Divisions 1 and 2 above, Metro's cross-appeal in Case No. A12A1842 is dismissed as moot.

*Judgment affirmed in Case No. A12A1841, and appeal in Case No. A12A1842 is dismissed as moot. Miller, P. J., and Branch, J., concur.*

---

[14] See *Chatham Orthopaedic Surgery Ctr., LLC v. Ga. Alliance of Community Hospitals, Inc.*, 262 Ga. App. 353, 357 (2) (585 SE2d 700) (2003) (overruled on other grounds).