**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 8, 2016**

# In the Court of Appeals of Georgia

A16A0340. BARNETT v. HOLT BUILDERS, LLC.

McMILLIAN, Judge.

Ken Barnett appeals the trial court's order denying his motion to dismiss this defamation action filed by Holt Builders, LLC ("Holt"). For the reasons set forth below, we find that the motion to dismiss should have been granted and reverse.

Before addressing the procedural posture of this case, it is helpful to briefly set out the facts of the underlying litigation giving rise to Holt's defamation action. In 2005, Vintage Communities, Inc. ("Vintage") borrowed money from Bank of North Georgia ("BNG") to develop Stonewater Creek subdivision (the "Subdivision"), a gated development with 124 lots planned in the initial phase. Vintage executed a deed to secure debt in favor of BNG in connection with that loan. Vintage also executed a construction deed to secure debt in favor of Integrity Bank, pledging additional

property that was intended to comprise a future phase of the Subdivision. In 2007, Vintage recorded the Declaration of Covenants for Stonewater Creek (the "Declaration") in Gwinnett County, naming itself the Declarant.[1]

In 2009, Vintage defaulted on its loan to BNG, and BNG took title to 62 vacant lots in the Subdivision.[2] Holt subsequently purchased those lots from BNG, as well as three additional lots, for a total of 65 lots. Four days later, Vintage executed an "Assignment of Declarant's Rights With Reservation of Annexation Right" to Holt, which was filed and recorded in Gwinnett County. At that time, only eight houses were occupied, and the roads, clubhouse, and swimming pool remained unfinished.

---

[1] The Declaration defines this term as follows:

"*Declarant*" shall mean and refer to Vintage Communities, Inc., a Georgia corporation, and such of its successors-in-title who shall (i) acquire from a predecessor "Declarant," and for the purpose of development or sale, all or any portion of the real property described in Exhibit "A" and/or Exhibit "B" hereto, and (ii) be designated as the "Declarant" in the deed of transfer by which such successors-in-title shall so acquire its interest in such real property, or by written assignment of Declarant rights in an instrument recorded in the Gwinnett County, Georgia records.

[2] Vintage, meanwhile, still owned adjacent land shown as a future phase of the Subdivision on the original development plan.

In 2010, Holt appointed Corbitt Woods and Reiner Rietig as members of the board of directors of the Stonewater Creek Homeowners Association (the "HOA") and Chafin as the board's president.[3] Holt then oversaw the completion of the Subdivision's amenities, including the clubhouse, tennis courts, and swimming pool, and many of the streets. In order to fund that construction, Holt opened a $625,000 line of credit, secured by the lots it had purchased from BNG. Holt, in turn, loaned over $532,000 to the HOA (the "Loan") to be repaid in part by the annual HOA fees and a special $6,000 fee assessed on each new lot completed.

In May 2014, non-party BCR Investments, LLC, a company affiliated with Holt, filed an application to rezone property adjacent to the Subdivision with the intent to annex that property into the Subdivision. Shortly thereafter, Barnett and eight other residents (collectively the "Residents") filed a derivative suit for the benefit of the HOA against Holt and Chafin, asserting claims for breach of fiduciary duty, declaratory relief, and injunctive relief and seeking punitive damages and attorney fees (the "Litigation"). In August 2014, the Superior Court of Gwinnett

---

[3] Chafin is a managing member of Holt, and Woods and Rietig are also affiliated with Holt.

3

County entered a temporary restraining order enjoining Holt from making further HOA payments on the Loan and from proceeding with the annexation of adjacent property.[4] Following discovery, the parties filed cross-motions for partial summary judgment, seeking a declaratory judgment that Holt is not a Declarant under the Subdivision's Declaration and therefore does not have the authority to annex any additional property into the Subdivision.[5]

As this Litigation proceeded, Holt and Chafin employed various methods of updating the Subdivision's homeowners regarding the status of the Litigation. For example, on November 7, 2014, Homeowner Management Services ("HMS")[6] sent a letter to the Subdivision's homeowners on behalf of the Subdivision's board of directors, of which Chafin was the president, discussing the status of the ongoing Litigation in which "a group of members in the [HOA] is pursuing a lawsuit against the [HOA], its President, the Declarant, and others." The letter enclosed correspondence from defense counsel to Chafin regarding the status of the Litigation

---

[4] An interlocutory injunction was subsequently entered.

[5] The trial court's grant of partial summary judgment for Chafin and Holt is the subject of a separate appeal.

[6] HMS is the HOA's management company.

and criticisms of the Residents' claims and tactics. And on February 20, 2015, HMS sent an email message on behalf of the HOA's board of directors with several updates, including commentary on the HOA's recent bill for legal fees relating to the Litigation and settlement negotiations:

> The first update pertains to the lawsuit filed by several members against the Association, et al.
>
> The Association received a bill for $17,098 for the Association's share of recent legal fees relating to the suit. This is in addition to the amount discussed at the annual meeting. This bill has been paid and will be reflected in the February financials. For perspective, the legal cost last month will consume 100% of 14 annual assessments, and is nearly double the annual pool budget. This would also pine straw the entire common area twice with a bit of money left over.
>
> The recent attempt by the Association and other defendants to settle this were rejected without comment from the Plaintiffs. The Board sincerely hopes that this is resolved quickly and at the smallest cost possible to the Association. It has cost too much already. We will keep the members apprised of future costs and activities relating to this ongoing issue.

Several days later, HMS sent another email to homeowners entitled "Response to Questions from Eblast On Friday 2.20.15," which attached a list of the Residents who

were plaintiffs in the Litigation. The email also stated that the "[HOA]'s share alone of the legal fees thus far is in excess of $70,000 since the choice was made by the Plaintiffs to sue the Association among others." Later that day, Barnett responded to HMS and all of the email's original recipients using the "reply all" function of the email in what he maintains was an attempt to clarify the misleading statements made by HMS on behalf of the board of directors. In his reply, Barnett attempted to explain the role of the HOA in the derivative lawsuit and the Residents' attempts to engage in settlement discussions with Holt and Chafin and attached various items of correspondence between counsel regarding these issues.

On March 11, 2015, Holt filed a defamation suit against Barnett, asserting claims for libel and slander and seeking punitive damages and attorney fees. The only statements specifically referenced in the complaint arise from Barnett's February 23, 2015 email that "[Holt] want(s) to continue to siphon off our money to pay for their development costs, legal costs, and other costs associated with them running their business" and that Holt was using HOA funds to pay its own legal expenses.[7] Barnett

---

[7] HMS continued to send correspondence to the homeowners regarding the Litigation. On April 3, 2015, HMS sent a letter to homeowners stating:

filed his answer on March 17, 2015, asserting as a defense that Holt failed to include "the certifications required by Georgia law for claims asserted against Barnett related to his actions in furtherance of his right to free speech in connection with an issue of public interest or concern." On April 2, 2015, Barnett moved to dismiss Holt's complaint for its continued failure to file the verification required under OCGA § 9-11-11.1. Following a hearing, the trial court denied Barnett's motion to dismiss, finding that Holt's suit is not subject to the requirements of OCGA § 9-11-11.1.[8]

Despite claims to the contrary, every party involved in the lawsuit is incurring attorney's fees. . . . The Board offered to meet with the Advisory Board and some (or all) of the Plaintiffs, but as of this writing, the Plaintiffs do not want the Advisory Board to attend, despite the fact that, at a minimum, these members, like all of the Members, are being sued as part of the Association. . . . This suit does not benefit the entire community . . .

And on April 28, 2015, HMS sent another letter discussing the Residents' unwillingness to meet regarding settlement and reiterating its view that the Litigation does not benefit the entire community, again attaching correspondence from defense counsel regarding the HOA's payment of legal fees and the status of the court's order enjoining the annexation of any property.

[8] On August 21, 2015, this Court granted Barnett's application for interlocutory appeal.

In his sole enumeration of error, Barnett asserts that the trial court erred in denying the motion to dismiss because his communication regarding the Litigation was protected under Georgia law. We review de novo the denial of a motion to dismiss. See, e.g., *Emory University v. Metro Atlanta Task Force for the Homeless, Inc.*, 320 Ga. App. 442, 443 (740 SE2d 219) (2013). The purpose of OCGA § 9-11-11.1, Georgia's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute, is

> to encourage citizen participation in matters of public significance through the exercise of the right of free speech and the right to petition the government for redress of grievances, and to prevent their valid exercise from being chilled through abuse of the judicial process.

*Atlanta Humane Society v. Harkins*, 278 Ga. 451, 452 (1) (603 SE2d 289) (2004). To prevent such abuse, the statute requires any claim that could reasonably be construed as infringing upon these rights to be accompanied by a detailed verification and specifies the circumstances under which the verification must be filed:[9]

---

[9] This verification must be in writing and

> shall certify that the party and his or her attorney of record, if any, have read the claim; that to the best of their knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is

For any claim asserted against a person or entity arising from an act by that person or entity which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, both the party asserting the claim and the party's attorney of record, if any, shall be required to file, contemporaneously with the pleading containing the claim, a written verification under oath. . . .

OCGA § 9-11-11.1 (b). See also *Harkins*, 278 Ga. at 452-53 (1) ("To accomplish these purposes, the crucial statutory provision is OCGA § 9-11-11.1 (b).") (citation and punctuation omitted). Although the statute allows a 10-day safe harbour for the

warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the act forming the basis for the claim is not a privileged communication under paragraph (4) of [OCGA §] 51-5-7; and that the claim is not interposed for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation.

OCGA § 9-11-11.1 (b).

claimant to provide the necessary verifications after the omission is called to his attention,[10] it is undisputed that Holt has not filed any verification.

Holt maintains, and the trial court agreed, that his complaint is not subject to the anti-SLAPP statute because the claims asserted by the Residents in the Litigation do not involve "an issue of public interest or concern" as required by the statute. We disagree. Subsection (c) of OCGA § 9-11-11.1 defines the term "act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern" under subsection (b) as

> any written or oral statement, writing, or petition made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or any written or oral statement, writing, or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.

---

[10] OCGA § 9-11-11.1 (b) ("If the claim is not verified as required by this subsection, it shall be stricken unless it is verified within ten days after the omission is called to the attention of the party asserting the claim.").

10

See *Berryhill v. Ga. Community Support & Solutions, Inc.*, 281 Ga. 439, 441 (638 SE2d 278) (2006).

Despite Holt's protestations otherwise, it cannot seriously be contested that Barnett's statements in the February 23, 2015 email were unconnected with the Litigation. Holt originally initiated the correspondence with Barnett and the other homeowners about the Litigation, and Barnett was responding directly to that correspondence, addressing Holt's characterizations of the status of the Litigation. Thus, Barnett's statements clearly fall within the definition of a "written . . . statement . . . made in connection with an issue under consideration or review by a . . . judicial body." OCGA § 9-11-11.1 (c). See *Metzler v. Rowell*, 248 Ga. App. 596, 598 (1) (547 SE2d 311) (2001) (where both lawsuit and zoning petition were pending at the time of the neighborhood residents' statements, those acts fell within the "expansive definition of protected speech and petition under OCGA § 9-11-11.1 (c)" and the trial court correctly dismissed the developer's suit). See also *Adventure Outdoors, Inc. v. Bloomberg*, 307 Ga. App. 356, 360 (705 SE2d 241) (2010) ("As the press conference was held to address an issue under consideration by a judicial body, i.e., the lawsuit recently filed in federal court in New York, [plaintiff] was required to file a

11

verification under OCGA § 9-11-11.1 (b).”); *Lovett v. Capital Principles, LLC*, 300 Ga. App. 799, 802 (686 SE2d 411) (2009) (school board's consideration of how to implement a computer program was an official proceeding and nothing in the anti-SLAPP statute rendered the verification requirement inapplicable because the defendants acted while engaged in a commercial transaction); cf. *Emory University*, 320 Ga. App. at 445-46 (1) (trial court did not err in finding anti-SLAPP statute inapplicable where there was no averment that defendant's "defamatory propaganda campaign" to interfere with plaintiff's business was done in connection with some official proceeding). Accordingly, the trial court erred in denying Barnett's motion to dismiss.

Although Holt denies filing his defamation suit to discourage Barnett's right to free speech or from participating in the Litigation, a party's subjective belief is not the standard for determining whether the verification requirements of the anti-SLAPP statute apply. Rather, the statute applies to any claim arising from any act that "could *reasonably* be construed" as one done in furtherance of the right of free speech or the right to petition government for a redress of grievances in connection with an issue of public interest. (Emphasis added.) OCGA § 9-11-11.1 (b). Thus, because Barnett's

12

statements regarding the pending Litigation fall within the scope of OCGA § 9-11-11.1 (c), Holt's lawsuit initiated in response to those protected statements should have been dismissed with prejudice[11] for failure to file a verification as required by OCGA § 9-11-11.1 (b).[12]

*Judgment reversed. Miller, P. J., and McFadden, J., concur.*

---

[11] See *Hawks v. Hinely*, 252 Ga. App. 510, 516 (2) (556 SE2d 547) (2001) ("Minimal effort is necessary by the party bringing suit to verify his complaint, and, if that party verifies improperly, he is given an additional ten days from the day that he is informed of the deficiency to correct his complaint. A party who fails to comply with such a simple prerequisite, which, in turn, protects the important right to petition government, should be subject to dismissal with prejudice.").

[12] In a supplemental brief, Holt argues that pursuant to a recent Supreme Court decision, *Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Community Trust*, 298 Ga. 221 (780 SE2d 311) (2015), dismissal is inappropriate because a material issue of fact exists regarding whether Barnett's statements were made in good faith and therefore afforded the protection of Georgia's anti-SLAPP statute. However, Holt's reliance on that case is misplaced. In *Ichthus*, the defendants asserted that their statements were privileged under OCGA § 9-11-11.1 and OCGA § 51-5-7 (4). Id. at 234. Here, the issue is procedural — whether a verification was required to be filed — such that it is not necessary to consider whether Barnett made the statement in good faith. See *Adventure Outdoors*, 307 Ga. App. at 361 (trial court not required to consider merits of statement when defendants refused to file verification). See generally *Harkins*, 278 Ga. at 453 (1).