**SECOND DIVISION**
**MARKLE,**
**LAND and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 13, 2025**

# In the Court of Appeals of Georgia

A24A1464. GIRALDI v. BOWEN.

LAND, Judge.

Jeff Giraldi was hospitalized for a serious infection after he received a full-arm tattoo at Inked Arts Tattoo Parlor. As a result of two online comments that Giraldi made to others as well as his report to the county health department, the owner of the tattoo studio filed a defamation lawsuit against him. Giraldi appeals from the trial court's order denying his motion to strike Bowen's defamation claims under Georgia's anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute, OCGA § 9-11-11.1. For the following reasons, we reverse in part and vacate in part.

A "'SLAPP, or Strategic Lawsuit Against Public Participation,' is a meritless lawsuit brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up its target's resources and driving up the costs of litigation." (Citation and punctuation omitted.) *Weaver v. Millsaps*, 370 Ga. App. 513, 513 (898 SE2d 239) (2024). Georgia's anti-SLAPP statute, OCGA § 9-11-11.1, "allows a defendant to move to strike or dismiss such a frivolous action as an avenue for ending the suit quickly, summarily, and at minimal expense." (Citation and punctuation omitted.) Id. Further, we "construe the statute broadly in furtherance of the General Assembly's declared purpose to encourage participation by the citizens of Georgia in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech." (Citation and punctuation omitted.) *Matthews v. Oskouei*, 369 Ga. App. 568, 570-571 (a) (894 SE2d 141) (2023).

This Court reviews "a trial court's ruling on an anti-SLAPP motion to strike de novo, viewing the pleadings and affidavits submitted by the parties in the light most favorable to the plaintiff (as the non-moving party)." (Citation and punctuation omitted.) *PNC Financial Svcs. Group v. Gibson*, 371 Ga. App. 660, 661 (1) (901 SE2d

331) (2024). See also *Wilkes v. McHugh, P. A. v. LTC Consulting,* 306 Ga. 252, 263 (2) (830 SE2d 119) (2019).

So viewed, the facts show that on April 21 and 22, 2023, Giraldi visited Inked Arts Tattoo Studio in Buford to have his entire left arm tattooed with colored puzzle pieces. Chris Bowen was the tattoo artist and the owner of the studio. Prior to receiving his tattoo, Giraldi signed a "Consent & Release Agreement" whereby he acknowledged that he would receive written aftercare instructions following his service, that it was his responsibility to follow the aftercare instructions, and that he fully waived and released Inked Arts Tattoo Studio from liability "for any and all claims that I may have for personal injury."

After the completion of the first day's work, Bowen cleaned Giraldi's tattoo with antimicrobial soap and ointment and wrapped the tattoo in plastic wrap. Bowen instructed Giraldi to take off the plastic wrap when he got home, clean the tattoo with antibacterial soap, re-wrap the tattoo, and then clean and re-wrap the tattoo again before bed. Giraldi was also instructed to wear a protective sleeve over the tattoo so that the plastic wrap did not fall off while he slept.

When Giraldi arrived for the second day of tattooing, Bowen was shocked to see that Giraldi was not wearing the plastic wrap. Bowen did not cancel the appointment as a result of this lapse in aftercare protocol, but did remind Giraldi of the proper aftercare procedures. After finishing the tattoo, Bowen wrapped Giraldi's arm in SaniDerm, a clear, medical-grade bandage, and provided him with instructions to remove the SaniDerm, clean the tattoo and replace with fresh SaniDerm after the first day and then again after four days.

Later that day, Giraldi developed a very high fever and severe pain as well as extreme swelling and oozing of his left arm. Giraldi went to the emergency room and was later discharged. The next day, he returned to the emergency room and was admitted to the hospital and was diagnosed with cellulitis and a staph infection in his left arm. He spent five days in the hospital.

As a result of several communications made by Giraldi regarding the tattoo and his subsequent infection, Bowen filed suit against Giraldi, alleging several counts of defamation per se, false light invasion of privacy, malicious interference with business, misappropriation of trade secrets, and seeking an interlocutory injunction. Those four communications are as follows:

*Health Department Report.* On July 13, 2023, Giraldi filed a complaint with the Gwinnett-Newton-Rockdale County Health Department (the "Health Department"). In a report, the Health Department employee, Val Sanderfer, wrote the following under "Complaint Details":

> On 7/13/23 @ 10:15 AM, Val Sandefer received a body art illness complaint via epi on-call and forwarded to Curtis for Follow-up. [sic] On 4/21 and 4/22. Complainant had two tattoo sessions at Inked Arts Tattoo in Buford. He went to get a left arm sleeve with color of [sic] puzzle pieces to represent autism awareness. The only concern he had about [the] tattoo parlor was that he noticed the artist (and owner) who tattooed his arm did not clean or switch needles between breaks during each session. He noticed him put the needle down on the table. He didn't see that he switched needles often. He got done with his second session on 4/22 about 4:00 PM and . . . he went to bed around 12 AM the following day, he experienced a high fever of 105 F[,] extreme swelling of his left arm, oozing and he felt delusional. That night [Giraldi] went to Wellstar North Fulton and was admitted for 5 days and was discharged on 4/28. During his visit, he tested positive for Staph [A]ureus from his arm . . ., elevated WBC, and was put on a series of antibiotics. Keisha Francis verified the hospital visits and labs. Epi investigation closed.

The next day, the Health Department conducted an inspection of Bowen's tattoo studio. The studio received a passing score and the inspection was closed.

*Private Text Message.* Bowen's complaint alleges that Giraldi sent a text to a friend, which it summarized as follows: Giraldi "falsely informed Person 2 that he had received an infection from receiving [sic] a tattoo from" Bowen. However, there is no other pleading or affidavit in the record that quotes the language of the text message.

*Facebook Message.* Giraldi also sent a Facebook message to another customer that he had met at the tattoo parlor. On April 28, 2023, Giraldi sent a message to the customer stating that

> I think it's proper form to tell you I have a serious staff [sic] infection from my tattoo from possible needle contamination at Inked Arts. There's basically no other way to get a staff [sic] infection. . . . I'm not trying to scare you or even tell you not to go there. It almost cost me my life so I feel inclined to let people know to be careful.

The customer also filed an affidavit confirming that Giraldi sent the message to her.

*Counsel's Pre-Suit Communications.* Bowen's complaint also bases his claims for negligent misrepresentation and injunctive relief on a pre-suit letter and affidavit written by Giraldi's counsel. Giraldi's counsel wrote a letter on July 12, 2023 to Zem Insurance, Bowen's liability insurance company, requesting information about liability insurance coverage that might apply to his claim. Bowen's complaint alleges that by

sending this letter, Giraldi (through his attorney) "communicated the false information directly to . . . Zem Insurance."

As a result of Giraldi's complaint to the Health Department, the two private messages he sent to friends, and the letter and affidavit sent by his attorney to Bowen's insurer, Bowen filed suit against Giraldi alleging several counts of defamation per se, false light invasion of privacy, malicious interference with business, misappropriation of trade secrets and seeking an interlocutory injunction. Giraldi acknowledged service, and filed an answer and counterclaims for negligence and vicarious liability. Giraldi also filed a motion to strike under Georgia's anti-SLAPP statute, OCGA § 9-11-11.1. After a hearing, the trial court denied the motion to strike, and Giraldi appeals from that order.

1. In related enumerations of error, Giraldi argues that the trial court did not properly apply Georgia's anti-SLAPP statute to the communications at issue. We agree.

In analyzing an anti-SLAPP motion to dismiss, the trial court engages in a two-step analysis. First, the trial court decides whether the moving party "has made a threshold showing that the challenged claim is one arising from protected activity."

(Citation and punctuation omitted.) *Wilkes,* 306 Ga. at 262 (2) (b). The moving party meets this burden by "demonstrating that the act underlying the challenged claim could reasonably be construed as fitting within one of the categories spelled out" in OCGA § 9-11-11.1 (c) (1) - (4). (Citation and punctuation omitted.) Id. These categories include any written or oral statement (1) "made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law"; (2) made "in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other official proceeding authorized by law"; (3) made in a place open to the public or a public forum in connection with an issue of public interest or concern"; or (4) "[a]ny other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern." OCGA § 9-11-11.1 (c) (1) - (4). See also *Lane Dermatology & Dermatologic Surgery v. Smith*, 360 Ga. App. 370, 378 (2) (861 SE2d 196) (2021).

If the moving party makes a threshold showing of protected activity, then the court proceeds to the second step of the analysis and determines whether the plaintiff has established a reasonable probability that he will prevail on the merits of his claim.

Id. "A claim that satisfies both prongs of the anti-SLAPP statute is subject to being stricken." *Joshua David Melberg, LLC v. Impact Partnership*, 355 Ga. App. 691, 693 (844 SE2d 223) (2020).

(a) *Health Department Report.* The trial court denied Giraldi's motion to strike Bowen's complaint against him arising from the report he made to the Health Department, explaining that the report did not fall under "protected activity" set forth in OCGA § 9-11-11.1 (c). Giraldi argues that the trial court did not properly apply OCGA § 9-11-11.1 to his report to the Health Department. We agree.

As stated above, for the protections of the anti-SLAPP statute to apply, there must be a threshold showing that the statements fall under protected activity set forth in OCGA § 9-11-11.1 (c) (2). *Emory Univ. v. Metro Atlanta Task Force for the Homeless*, 320 Ga. App. 442, 445 (740 SE2d 219) (2013). Giraldi's report to the Health Department falls under both OCGA § 9-11-11.1 (c) (1), which covers "any written or oral statement or writing or petition made before a legislative, executive, or judicial proceeding *or any other official proceeding authorized by law[,]*" (emphasis supplied) and OCGA § 9-11-11.1 (c) (2), which applies to "[a]ny written or oral statement or writing or petition made in connection with an issue under consideration or review by a

9

legislative, executive, or judicial body, *or any other official proceeding authorized by law.*" Although these descriptions are broad, they do require that the statement in question be "made in relation to some official proceeding." (Footnote omitted.) *Emory Univ,* 320 Ga. App. at 446 (1).

Reports to the Health Department constitute an "official proceeding authorized by law" as contemplated by OCGA § 9-11-11.1 (c) (1)-(2). The Georgia Department of Public Health was created by the authority of OCGA § 31-2-1 *et seq.*, to safeguard and promote the health of the people of Georgia. There is a board of health in every county in Georgia. OCGA § 31-3-1. These boards are vested with the power to "[t]ake such steps as may be necessary to prevent and suppress disease and conditions deleterious to health and to determine compliance with health laws and rules[.]" OCGA § 31-3-4 (a) (3). This includes monitoring, investigating, and collecting information on such notifiable diseases and conditions. Ga. Comp. R. & Regs. r. 511-2-1-.02.

In this case, Giraldi filed a report with the Health Department as a result of a serious staph infection he received immediately after having his arm tattooed. This was done in an effort to request an official investigation by the Health Department into

the sanitation practices of Inked Arts Tattoo Studio and was a matter of public concern because such an investigation could potentially avoid the spread of staph infections to other tattoo clients. Thus, Giraldi's call and subsequent statements made to the Health Department were clearly statements made in an effort to initiate an official proceeding by the Health Department on a matter of public concern. See e. g. *Browns Mill Dev. Co. v. Denton*, 247 Ga. App. 232, 234 (1) (a) (543 SE2d 65) (2000) (sending written memorandum to county board of commissioners in opposition to developer's re-zoning petition and disseminating an environmental report to media and government officials was protected activity under anti-SLAPP statute because the memorandum constituted a petition to an executive branch of government involving matters of general public concern). Indeed, to hold otherwise would have a chilling effect upon the public's ability to report their concerns to the Health Department.

Further, the trial court erred in concluding, in its analysis of the second step of the anti-SLAPP analysis, that Bowen established the probability that he would prevail on his defamation claim arising from Giraldi's statement to the Health Department. There is no civil liability for a good faith report made to the Health Department. "Any person, including but not limited to practitioners of the healing arts, who in good faith

11

submit reports or data to the Department or to a county health department pursuant to the provisions of this Chapter *shall not be liable for any civil damages therefor.*" (Emphasis supplied.) Ga. Comp. R. & Regs. r. 511-2-1-.04. Further, Giraldi's statements to the Health Department are privileged because they were "made in good faith in the performance of a legal or moral private duty." OCGA § 51-5-7 (2).

Bowen argues that Giraldi's report to the Health Department was not made in good faith because it was made approximately a month after he left the hospital and because the Health Department closed their inquiry after an inspection failed to find any evidence that the tattoo studio's hygiene practices did not comply with required standards. These arguments are unavailing. "Statements are deemed to have not been made in good faith, but rather with malice, if the evidence shows in a clear and convincing manner that a defendant in fact entertained serious doubts as to the truth of his statements." (Citation and punctuation omitted.) *Neff v. McGee*, 346 Ga. App. 522, 527 (1) (a) (816 SE2d 486) (2018). See also *Smith v. Henry*, 276 Ga. App. 831, 832 (1) (625 SE2d 93) (2005) (evidence that the defendant believed his statements to be true at the time they were made is evidence of good faith). Bowen has not pointed to

any evidence in the record demonstrating that Giraldi doubted the truth of his statements at the time he made the report to the Health Department.

Based on the above, we conclude that the trial court erred in its application of the anti-SLAPP statute, OCGA § 9-11-11.1, to Giraldi's report to the Health Department.

(b) *Facebook Message.* As noted above, Bowen's complaint states that on April 22 and 28, 2023, Giraldi sent a private Facebook direct message to a woman that he met at the tattoo studio, informing her that he had been in the hospital because of a "serious staff [sic] infection from my tattoo from possible needle contamination[,]" and that he was reaching out to her because it "almost cost me my life so I feel inclined to let people know to be careful."

Giraldi argues this message constituted protective activity under OCGA § 9-11-11.1 (c) (4). OCGA § 9-11-11.1 (c) (4) provides that anti-SLAPP protected language includes "any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or issue of public concern." We agree.

When determining whether an issue is "an issue of public concern," the courts of California,[1] have considered many factors, including "whether the subject of the speech or activity . . . could affect large numbers of people beyond the direct participants" or involved a "topic of widespread, public interest."(Citation and punctuation omitted.) *FilmOn.com v. DoubleVerify Inc.*, 7 Cal. 5th 133, 145-146, 150 (II) (A), (III) (A) (439 P.3d 1156) (2019). Further, when evaluating the criteria set forth under OCGA § 9-11-11.1 (c) (4), "[t]he focus of the speaker's conduct should be the public interest, [but] it may encompass activity between private people." (Citation and punctuation omitted.) *Hecimovich v. English School Parent Teacher Org.*, 203 Cal.App.4th 450, 465 (137 Cal.Rptr.3d 455) (2012) (communications in issue were connected with the public interest when they concerned "the well-being of children in an after school sports program, as discussed between and among members of the PTO, parents of the young team members, and league officials"). Here, the focus of Giraldi's Facebook message was to alert another client of the tattoo studio to an issue

---

[1] "In 2016, the General Assembly revised OCGA § 9-11-11.1 to substantially track California's anti-SLAPP procedure. Thus, in interpreting our new OCGA § 9-11-11.1, we may look to California case law for guidance, especially decisions that employ the same kind of statutory analysis that we generally use." (Citation and punctuation omitted.) *Lane Dermatology* 360 Ga. App. at 378 (2), n. 2.

of public interest within the meaning of the anti-SLAPP law— that is, the potential for customers of the tattoo studio to receive a staph infection and concern for the safety of its other customers. See also *Wilbanks v. Wolk*, 121 Ca.App.4th. 883, 899-900 (III) (B) (33 Cal.Rptr.3d 145) (quality of seller's products was an issue of public concern); *Gilbert v. Sykes*, 147 Cal.App.4th 13, 23-24 (II) (53 Cal.Rptr.3d 752) (2007) (plastic surgery patient's website created to relate her bad experience with well known surgeon concerned 'matter of public interest' within meaning of anti-SLAPP statute).

Further, the trial court erred in concluding, in its analysis of the second step of the anti-SLAPP analysis, that Bowen established the probability that he would prevail on his defamation claim arising from Giraldi's Facebook message. Giraldi's Facebook message was privileged because it was sent to encourage the recipient to "be careful" regarding the possibility of staph infections, and thus was a privileged statement "made in good faith in the performance of a public duty" or a "legal or moral private duty." OCGA § 51-5-7 (1)-(2); *Mathis v. Cannon*, 276 Ga. 16, 20-21 (2) (2002) (a defamation cause of action requires an unprivileged communication to a third party). See also *Green v. SunTrust Banks*, 197 Ga. App. 804, 810 (4) (b) (399 SE2d 712) (1990) (group meeting in which bank employees were told that other employee's actions

15

involved embezzlement or 'stealing' were privileged because they were made in good faith performance of a public duty or legal or moral duty).

(c) *Text Message*. Bowen's complaint also alleges that Giraldi sent a text message to another friend, alleging that he "falsely informed [her] that he had received an infection from receiving a tattoo from" Bowen. However, neither the complaint nor affidavits in the record contain the exact language of this text message. Although Bowen's brief in response to Giraldi's motion to strike contains undated screen shots of the purported text message, the trial court was required to conduct its anti-SLAPP analysis based on information contained in the pleadings and affidavits in the record. See *American Civil Liberties Union, Inc. v. Zeh*, 312 Ga. 647, 653 (1) (c) (864 SE2d 422) (2021) (for the purposes of OCGA § 9-11-11.1 inquiry, "the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant") (citation omitted); *Rosser v. Clyatt*, 348 Ga. App. 40, 43 (2) (b) (821 SE2d 140) (2018) (OCGA § 9-11-11.1 "contemplates a substantive, evidentiary determination of the plaintiff's probability of prevailing on his claims[,]" and it "directs the court to consider supporting and opposing affidavits") (citation and punctuation omitted). See also OCGA § 9-11-7 (defining pleadings as including "a complaint and an answer,"

as well as a third-party complaint, third-party answer and a cross-claim). Further, although the trial court held oral argument on Giraldi's motion to strike, the transcript shows that no new exhibits were admitted, and the trial court's order confirms that no evidence was presented during the hearing.

Accordingly, because the trial court improperly considered an alleged text message that was not part of the pleadings or affidavits, and the trial court's order reflects that it did not consider additional evidence presented during the hearing, we vacate the trial court's denial of the motion to strike claims arising from the text message under OCGA § 9-11-11.1. Compare *Jenkins v. Anderson*, 295 Ga. App. 537, 538 (1) (672 SE2d 418) (2008) (finding plaintiff failed to show affirmatively by the record that the trial court erroneously found that statements made in letter were privileged when record showed that the trial court considered the letter during the untranscribed hearing).

(c) *Counsel's Pre-Suit Communications to Insurance Company.* Bowen's complaint alleged a claim of tortious negligent misrepresentation against Giraldi arising from statements made by his legal counsel to Bowen's insurer, Zem Insurance.

Giraldi argues that the trial court erred in denying his motion to strike any claims arising from these statements. We agree.

Bowen's complaint seeks to recover damages and injunctive relief based on a letter and accompanying affidavit sent by Giraldi's personal injury attorney, Sutton T. Slover, to Bowen's liability insurance company, Zem Insurance. In his accompanying letter and affidavit, Slover requested information regarding Bowen's insurance coverage and wrote that "I represent Jeff Giraldi with respect to injuries he has a sustained as a result of a [t]attoo received by Ink Arts Tattoo [sic] on or about April 21 & 22, 2023. Jeff Giraldi is asserting a claim against the aforementioned party as a result of his injuries." Notably, the complaint does not seek to recover for any pre-suit statements made by Giraldi to his counsel. Rather, Bowen's complaint alleges that Giraldi "communicated false information directly to . . . Zem Insurance" and that Zem Insurance " read, reviewed, relied on, and was misled by [Giraldi's] misrepresentations."

Statements made by Giraldi to his counsel and made by Giraldi's counsel to Zem Insurance as part of the pre-suit litigation fall under activity protected under OCGA § 9-11-11.1. See OCGA § 9-11-11.1 (c) (2) (a statement "made in connection

with an issue under consideration or review by a . . . judicial body"). In an analogous case interpreting California's anti-SLAPP statute, the court found that a pre-litigation demand letter was protected under the anti-SLAPP statute because "[f]iling a lawsuit is an exercise of one's constitutional right of petition, and statements made in connection with or in preparation of litigation are subject to" the anti-SLAPP lawsuit. *Kashian v. Harriman*, 98 Cal.App.4th 892, 908 (I) (120 Cal.Rptr.2d 576) (2002). See also *Buckley v. DirectTV, Inc.*, 276 F.Supp.2d 1271, 1274 (N. D. Ga.) (2003) (cable provider's pre-litigation demand letters to purported purchasers of devices used to unscramble cable satellite signals without authorization were protected by Georgia's anti-SLAPP statute).

Further, the trial court's order failed to make a finding regarding the second step of the anti-SLAPP analysis as it pertained to Bowen's claim for tortious negligent misrepresentation. Its essential elements are: "(1) the defendant's negligent supply of false information to forseeable persons, known or unknown; (2) such person's reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." (Footnote omitted.) *Hardaway Co. v. Parsons, Brnckerhoff, Quade & Douglas*, 267 Ga. 424, 426 (1) (479 SE2d 727) (1997). Neither

the trial court nor Bowen have pointed to any information transmitted by Giraldi's counsel to the insurance company that was false. Indeed, Giraldi was injured as a result of receiving a tattoo and Giraldi's counsel was representing him in pursuing a claim against the tattoo studio as a result.

2. As a result of our holding in Division 1, we need not address Giraldi's remaining enumeration of error.

*Judgment reversed in part and vacated in part. Markle, J. and Davis, J., concur.*